1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,            : 10-CR-00600(DLI)

                                     :
                                     :
                                     :
        -against-                    : United States Courthouse
                                     : Brooklyn, New York
                                     :
                                     :
                                     : Friday, February 4, 2011
MICHAEL METTER, et al.,              : 10:00 a.m.
                                     :
        Defendant.                   :
                                     :

- - - - - - - - - - - - - - X


TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE DORA L. IRIZARRY
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    BY:  WILLIAM E. SCHAEFFER, ESQ.
        Assistant United States Attorney


For the Defendant:    HINSHAW & CULBERTSON, LLP
Michael Metter        780 Third Avenue
        4th Floor
        New York, New York 10017
        BY: MARANDA E. FRITZ, ESQ.


Victoria A. Torres Butler, CRR
Official Court Reporter

2

APPEARANCES:   (Continued)

For the Defendant:        BRAFMAN & ASSOCIATES. P.C.
Steven Moskowitz              767 Third Avenue
                             26th Floor
                             New York, New York 10017
                         BY:MARK M. BAKER, ESQ.

For the Defendant:        MOSKOWITZ & BOOK, LLP
Andrew Tepfer                1372 Broadway
                             Suite 1402
                             New York, New York 10018
                         BY:AVRAHAM MOSKOWITZ, ESQ.

For the Defendant:        MERINGOLO & ASSOCIATES, P.C.
Seymour Eisenberg            1790 Broadway
                             Suite 1501
                             New York, New York  10019
                         BY:JOHN C. MERINGOLO, ESQ.

For the Defendant:        RICHARD H. ROSENBERG
George Speranza              250 West 57th Street
                             Suite 1931
                             New York, New York 10107
                         BY:RICHARD H. ROSENBERG, ESQ.

For the Defendant:        SCHLAM STONE & DOLAN
Thomas Cavanagh              26 Broadway
                             19th Floor
                             New York, New York 10004
                         BY:JAMES SHERWOOD, ESQ.

For the Defendant:        PAUL BATISTA, P.C.
Frank Nicolois               26 Broadway
                             New York, New York 10004
                         BY:RONALD G. RUSSO, ESQ.

Court Reporter:  Victoria A. Torres Butler, CRR
                 Official Court Reporter
                 Tele: (718) 613-2607 / Fax: (718) 613-2324
                 E-mail:  VButlerRPR@aol.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Proceedings                                    3

(In open court.)

(Judge DORA L. IRIZARRY enters the courtroom at 10:06 a.m.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Please, be seated.

(Pause in the proceedings.)

THE COURT:  You may call the case.

THE COURTROOM DEPUTY:  Criminal cause for status conference in Docket Number 10-CR-60, United States versus Metter, et al.

Counsel, please state your appearances for the record.

MR. SCHAEFFER:  William Schaeffer for the United States.

Good morning, Your Honor.

THE COURT:  Good morning.

And I'm going to ask, please, that defense counsel respond in order as my deputy reads out the name of your client.

THE COURTROOM DEPUTY:  For Michael Metter, Maranda Fritz -- F-R-I-T-Z.

Good morning, Your Honor.

THE COURT:  Good morning.

Where is Mr. Metter?

Proceedings                                                      4

THE DEFENDANT:  Good morning, Your Honor.

THE COURT:  Good morning, sir.

THE COURTROOM DEPUTY:  For Steven Moskowitz?

MR. BAKER:  Mark Baker for Steve Moskowitz.

Good morning.

THE COURT:  Good morning.

Where is Mr. Moskowitz?

MR. BAKER:  Right here (indicating).

THE DEFENDANT:  Good morning.

THE COURT:  Good morning.

THE COURTROOM DEPUTY:  For Andrew Tepfer.

MR. MOSKOWITZ:  Good morning, Your Honor.

Avi Moskowitz for Mr. Tepfer, who is seated right here.

THE COURT:  Good morning.

THE DEFENDANT:  Good morning.

THE COURTROOM DEPUTY:  For Seymour Eisenberg?

MR. MERINGOLO:  Good morning, Your Honor.

John Meringolo for Mr. Eisenberg.  He's seated right next to me.

THE DEFENDANT:  Good morning.

THE COURT:  Good morning.

THE COURTROOM DEPUTY:  For George Speranza?

MR. ROSENBERG:  Good morning, Your Honor.

Richard Rosenberg for Mr. Speranza.  Mr. Speranza is

Proceedings                                    5

seated on the bench.

THE COURT:  Good morning.

THE DEFENDANT:  Good morning.

THE COURTROOM DEPUTY:  For Thomas Cavanagh.

MR. SHERWOOD:  Good morning, Your Honor.

James T. Sherwood for Mr. Cavanagh.  Mr. Cavanagh is seated on the bench.

THE COURT:  Good morning.

THE DEFENDANT:  Good morning.

THE COURTROOM DEPUTY:  And for Frank Nicolois?

MR. RUSSO:  Good morning, Your Honor.

Ronald G. Russo appearing on behalf of Paul Batista. Mr. Batista is on trial in the Southern District and, unfortunately, his application to appear here this morning was denied.  So, I am just standing in for him.  And Mr. Nicolois is sitting to my right.

THE COURT:  Good morning.

Well, in the future, Mr. Batista should advise the court as to any conflict that he has with trial schedules when we set a conference date.

MR. RUSSO:  It's not clear to me that he knew when this was set that he would go to trial.

THE COURT:  In Federal Court I find it a little bit odd.

MR. RUSSO:  That's fine, Judge.  I'll let him know.

Proceedings                                    6

THE COURT:  And I think that's everyone.  All right.

And I did want to acknowledge that I did receive -- first of all, before I get started, I'm going ask everyone please to remain seated for the proceedings and speak into microphones so that we can all hear each other.  We've got some members in the audience, they won't hear a thing if you don't use the microphones.  It's just the acoustics of the courtroom.

I just want to acknowledge that the Court did receive the Government's letter dated January 25th of 2011, which was also posted electronically, setting forth a status report as to the discovery, and I appreciate you laying that out.

Have all defense counsel had a chance to review the letter?

ALL:  Yes.

THE COURT:  Okay, I see everybody's nodding yes.

Is there anybody who disputes anything that's indicated in that letter.

MS. FRITZ:  Not disputed, Your Honor, but there are some issues I'd like to address.

THE COURT:  All right.  We will he get to that, then.

Mr. Schaeffer, is there anything you would like to add with respect to the status of this case?  I did note that

Proceedings                                          7

there were some items that were going to be made available in the future.  So, perhaps you could tell us when that could be expected.

MR. SCHAEFFER:  Your Honor, I had a discussion with Ms. Fritz who at the last status conference you designated as the attorney who, for at least those issues, would represent the defense attorneys in the case with respect to where we are.

And the first point I would make is that I think missing from the letter is that there are e-mails that we received from Internet service providers pursuant to a search warrant that I will make available to all defense attorneys. And so that, I do not believe that's in the letter.  But beyond that --

THE COURT:  When do you expect to provide that to the attorneys?

MR. SCHAEFFER:  What I had discussed with Ms. Fritz was, for the remaining discovery that I need to turn over -- which would include those e-mails, creating a financial records database of the documents that we have subpoenaed and received in the case and, also, the sending out of the list of computers that were seized at the search sites.

I would expect that within the next four weeks I will have been able to have provided all of that material, and any lists for defense attorneys to request, and any of the

Proceedings                                        8

hard drives that need to be sent to the copy center, which I need to do also.  And so, my schedule was to try to get that done within the next four weeks.

THE COURT:  So, we're looking at the first full week of March; am I correct?

MR. SCHAEFFER:  By the end of this month, I would expect.

THE COURT:  Okay.

MR. SCHAEFFER:  And what that would leave would really be just some miscellaneous production.  What I've just indicated and what I laid out in the letter would be about 97 percent of the materials that I have in the case.

THE COURT:  Ms. Fritz.

MS. FRITZ:  Yes, Your Honor.  Thank you.

First of all, when last we were here, Mr. Schaeffer represented that these were steps that were going to be taken after the last conference.  So, first of all, I'm concerned that in between the last conference and this conference, virtually no discovery has occurred.  What we saw instead was a letter to the Court, as we were looking at this conference being held, was a letter saying 'I will do a number of things'.  So, in the first instance, I'm concerned about the extent to which we really received virtually nothing since we were last here.

Second, when we were last here, Mr. Schaeffer spoke

Proceedings                                           9

about the need to address some attorney-client privileged materials.  That came up in the context of the fact that dozens of computers had been seized from the offices of Spongetech.  And it was my understanding the last time we were here that Mr. Schaeffer was going to take steps to make certain that any attorney-client privileged materials on these seized computers were not being reviewed.  As I understand it now, that process seems to have kind of disappeared.

When I raised the issue with Mr. Schaeffer earlier this week he indicated that, as far as he was concerned, the onus was on the defense to identify where attorney-client privileged materials would exist on those many dozens of seized computers, even though we don't even have an inventory or list at this point to follow in terms of the computers that they have in their possession.  So, I think Mr. Schaeffer may be being overly simplistic when he says there are dozens of computers and we're going to make those hard drives available.

In the first instance, it is far more likely than not that we're going to have to go to that attorney-client step on these seized computers before they're available for review by Mr. Schaeffer's office or by any of the other defense counsel.  So, I think we need to build in that and have it clearly understood that those hard drives are not going to be simply be copied and made available to folks where it appears that there is likely to be material on there that

Proceedings                                     10

is attorney-client.

With respect to the Internet provider information, I did raise that with Mr. Schaeffer last time --

THE COURT:  I'm sorry, say the last thing again.

MS. FRITZ:  Mr. Schaeffer a moment ago mentioned the fact that they had obtained material from Internet service providers.

THE COURT:  Yes.

MS. FRITZ:  And I did raise with Mr. Schaeffer a moment ago that the fact that that didn't appear in his letter to the Court.

He indicates now that we're going to receive that. But again my concern is the same; all this material, we're being told, will be received but I don't see any concrete steps have been taken and so far we seem to have gotten a lot of nothing.

THE COURT:  JUST bear with me for one second.

(Pause in the proceedings.)

MS. FRITZ:  Your Honor, we may also, undoubtedly we do also have an issue with respect to these e-mails that were from directly from the Internet service providers which also undoubtedly contain attorney-client privileged material.

The last time we were here, Mr. Schaeffer did seem to appreciate the fact that that issue would have to be

Proceedings                                                    11

addressed, but neither in the letter, nor here today does he seem to be acknowledging that we still have that issue and it still has to be addressed.

(Pause in the proceedings.)

THE COURT:  It was my recollection that at the last conference which we had on November 22nd, that the Government indeed was going to look into and establish, in fact, a privilege team to address these questions of privilege which, it seems to me, that all of the parties were in agreement was a problem in the case.  And I was told at the last conference, according to my brief notes, that the SEC was working out the issue of privileged documents.

What is the status of the establishment of a taint team?  I think that this is a real issue whether it's in an e-mail form, or it's in a computerized form, or it's in hardcopy documents, there was just this whole -- as I understand it, this whole-scale seizing of documents, including from attorneys' offices; am I correct?  From in-house counsel?  Or at least these are, I am assuming, the executives of Spongetech, who we can assume, I don't think it's a far stretch to assume, would have been the individuals who would have had the communications with any in-house counsel or outside Counsel that might have been retained for any issues arising out of the company business.

Proceedings                                    12

So, I mean, this is something that should have been addressed initially when these items were first seized.  And my understanding was that the Government was going to complete the documentary discovery by early January.

Now, the one thing that the Government does seem to have provided -- I'm not so sure that the defense has received nothing -- the letter says that, well, November 15th would have predated the hearing, the status conference before this Court.  But there was, at least as to Defendant Cavanagh, the same items that had been provided November 15th, which was a compact disc containing copies of documents contained in 67 boxes of documents seized pursuant to the execution of search warrants on May 5th of 2010.

After our conference, the Government says it produced a compact disc containing 11 transcripts of testimony.  But other than that, nothing has really been produced and the defense is, in fact, waiting.

But the privilege issue, I think, concerns me because presumably the Government is not going to be turning over to the defense items that they have not yet first reviewed, I would think.  I wouldn't.  As a former prosecutor, I wouldn't have turned over to the defense any documents that I didn't look at first.

How do you know it's discoverable without looking at it?  Mr. Schaeffer?

Proceedings                                          13

MR. SCHAEFFER:  Let me set the record straight with regard to the attorney-client privilege issue which seems to have been confused since the last status conference.  There's several issues.

One, with respect to the SEC database, which I will be providing next week to the copy center, that is what I recall addressing at the last status conference with respect to the delay in having that available to defense attorneys.

Because the SEC had informed me after they had provided it to me that there were documents on there that were, from the SEC's point of view, privileged, and should not have been put no that database and needed to be removed before either the Government looked at them or they were provided to defense attorneys.  And so, that has resulted in a delay in the SEC database being provided to the copy center.  But those documents have been removed from the database and there is no SEC attorney-client issue.

THE COURT:  What you're telling me is that the SEC has removed what they think are privileged documents from what they produce to defense counsel in the future?

MR. SCHAEFFER:  Yes.  So, I think that's the SEC issue that I, I believe I raised last time.

(Pause in the proceedings.)

THE COURT:  Well, that raises yet another issue

Proceedings                                          14

because I also have the civil matter that's been filed by the

SEC, and some of the defendants here are defendants in that

matter as well, and I have not seen any applications by anyone

for any kind of protective orders or to any kind of privilege

logs to be created based on documents that have been seized by

the SEC, which I assume are also going to be relevant in the

civil case.

          MS. FRITZ:  Your Honor, I just don't want to confuse

the issue of this SEC database and a claimed work-product

privilege, which I think is very separate and apart from the

seized computers and the direct access that they've gotten to

e-mail accounts, which is a very clear-cut, I think,

attorney-client issue.

          The SEC withholding things on a work-product

privilege basis is, I think, an issue that we can address much

more discretely than the fact that DOJ went in and seized,

wholesale hardcopy materials, computers, and got direct access

to Internet service providers in all e-mails.  So, that has

nothing to do with the SEC, that's all I'm saying.

          MR. SCHAEFFER:  And Your Honor, if I could just add,

I may be not phrasing this as well as I should by saying that

from the point of view of the SEC, it is a privileged document

whether it's work-product or their, what they would call,

attorney-client or -- any privileged documents from the SEC is

what we have discussed.  And I'm only raising that issue

Proceedings                                                    15

because you raised it.

        THE COURT:  But what the defense is raising here anyway --

        MR. SCHAEFFER:  So, I just, as far as I understand, the SEC issue, I think there is no dispute about.

        MS. FRITZ:  Now that -- I thought, based on conversations with Mr. Schaeffer, the only things that had been taken out were what the SEC considered wok product.

        If now I'm being told that the SEC did an attorney-client review, and took materials out on the basis of --

        MR. SCHAEFFER:  No, no, that's not what I'm saying.

        MS. FRITZ:  Maybe we just need clarification then.

        Did the SEC withhold materials based on attorney-client privilege?

        THE COURT:  I think there is an SEC attorney assigned to this matter, both to the civil case and I assume to the criminal matter.  There was somebody here the last time.  I should think that they should provide a report to the Court to be posted electronically as to exactly what kind of matter it is that they have redacted from what's being produced.

        MR. SCHAEFFER:  I think I can clarify this.  I think none of this makes any sense.

        The SEC provided a database to the Government a

Victoria A. Torres Butler, CRR
Official Court Reporter

Proceedings                                                    16

document that they had obtained pursuant to their investigation of Spongetech.  They subsequently informed the Government that there were documents in that database that they did not believe should be provided to either the Government or to the defense attorneys.

And I am, I am correcting myself and possibly misstating what I would call attorney-client documents to say work-product documents, I'm not entirely --

THE COURT:  Mr. Schaeffer.

MR. SCHAEFFER:  Yes.

THE COURT:  What I'm not interested in getting right now here is hearsay.  So, what I would like to get, directly from the SEC, is exactly what kind of privileged documents it is that --

MR. SCHAEFFER:  I --

THE COURT:  -- they did not turn over that they felt was not appropriate to turn over to either the Government or to the defense in this case.

MR. SCHAEFFER:  Okay.  I said, I --

THE COURT:  You can't speak over me.  In the first place, the reporter can't take it down.  In the second place, it's rude.

Because what I'm getting is sort of your understanding, which is not clear at all.  And so, I would much prefer to get a statement directly from the SEC as to

Proceedings                                          17

exactly what kind of documents it is that they felt were privileged in whatever way it was and to specify whether they thought it was work-product.

And this is just a general statement.  I don't need for them to go down and say document X or Bates document whatever it is.  But this is, in terms of the documents that were withheld from production, these documents were withheld were production because they fell into some form of attorney privilege, either as work-product or as attorney client privilege, or both.  They're the ones who did the withholding. So, at this point, I'm not interested in getting any kind of hearsay.

Don't shake your head.  This is what you're going to do and this is what I want to get.

MR. SCHAEFFER:  I just don't think you have the facts straight.

THE COURT:  Exactly.  And that's why I want to get, from the SEC exactly --

MR. SCHAEFFER:  Well, I can turn over.

THE COURT:  -- what it is.

MR. SCHAEFFER:  I can turn over to you the e-mail that they sent me to review the database to find out if those three documents were in it.  That's all it is.

THE COURT:  I want that statement.  I don't know why you're being resistant.  And that's an order of the Court.

Proceedings                                          18

And I'm done discussing that.

MR. SCHAEFFER:  Well, I --

THE COURT:  So, let's go now to the other issue, which I think is more problematic and which is, because the SEC stuff seems to be a bit more finite and manageable.

There is the issue of all these other things that have been seized.  The computer hard drives and so on, computer databases, that are likely to contain privileged information.  And I would like to know what steps the Government has taken to assess what steps need to be taken and what steps have been taken to putting together a taint team. That's what I thought was going to be done in this in this interim.  And that's what we discussed.

MR. SCHAEFFER:  Your Honor, as I indicated in the letter, the procedure the Government is employing here with respect to the seized computer evidence is, before reviewing it, we requested from defense counsel any attorney names or associate of attorneys to do a filter before we review those documents in computer form.  And therefore, we would then filter out the attorney-client documents.

THE COURT:  But I don't see how the trial team does that.  It seems to me you need to have a taint team.  What if something goes through the filter?

MR. SCHAEFFER:  Correct.  Correct.  A filter team would be removing those documents, which would then leave the

Proceedings                                          19

computer documents that do not have any attorney-client issues.  And then, we can review them.

THE COURT:  Ms. Fritz.

MS. FRITZ:  Your Honor, at least now we're back to discussing what needs to be done with respect to the seized materials.  Personally, I don't have any recollection of Mr. Schaeffer asking me for such a list.  I'm happy to provide it.  I became very concerned this week when Mr. Schaeffer seemed to take the position that those materials were simply going to be made available and anybody who wanted copies could get copies.

Now we've taken a step back.  Now we're at least talking about a process.  That certainly is one step in the process, what Mr. Schaeffer just described, and I'm sure all defense counsel will be happy to provide the names of the attorneys that were involved whose names probably appear either in the documents or on the e-mails.

In addition, Mr. Schaeffer and I discussed the fact -- and I thought this would have already happened by now -- that we would receive an inventory of seized computers and other seized materials.

I also indicated that I am more than happy to go through those and indicate where I think it is most likely that attorney-client privileged materials reside, although obviously I'm only doing that to indicate where I think they

Proceedings                                                    20

may be.  That's not intended to eliminate the need to actually conduct those kinds of searches by a taint team.

THE COURT:  How long is it going to take the defense to put together a list of attorneys and law firms that might be relevant to this inquiry?

MS. FRITZ:  We can have that list ready and to Mr. Schaeffer within a week.

MR. SCHAEFFER:  Your Honor, may I add something?

THE COURT:  Yes.

MR. SCHAEFFER:  On December 27th, 2010, I sent a letter to defense attorneys requesting this information.  It went to every defense attorney.  I discussed this on the phone this week with Ms. Fritz, that I had not received anything from her and that I had only received from one defense attorney any indication for what I am asking for, and what she is saying now that she can get me within a week.  And therefore, as far as the Government is concerned, we met our obligation to get this information prior to reviewing these computers.  And only one attorney out of the seven responded to that letter.

That letter is also listed on my report to the Court as far as what the procedures were the Government was employing in dealing with the seized computer evidence.

MS. FRITZ:  The problem is, Your Honor, those procedures then appear to have been virtually abandoned.  And

Proceedings                                             21

Mr. Schaeffer, by letter, simply --

THE COURT:  I don't see where.  I'm sorry to interrupt you, Ms. Fritz, but I don't.  Maybe I'm missing it?

MR. SCHAEFFER:  It's actually not in the letter.

THE COURT:  Thank you.

MR. SCHAEFFER:  So, you would not know about the letter I had sent.

THE COURT:  No,  and it wasn't docketed on ECF either.  And perhaps, since there is a dispute as to what kind of communication is going on, maybe it might be best, even though I hate cluttering up a criminal docket with correspondence between Counsel or among Counsel, but perhaps on issues like this that might potentially require some sort of ruling or intervention from the Court, it might be wise to post such a document electronically.

But there is no mention about privileged documents or anything of the sort in this letter.  I'm sure I would have noticed that.

Well, let me say this:  It's not fair for the Court to get heavy-handed with the Government if they have taken some steps to move forward and then the defense is not doing what it can to make sure that the proper steps are being taken.  Even if it means that if there has been communication back and forth between the Government and the defense, and the defense feels that the Government is not moving forward

Proceedings                                                    22

quickly enough or is not responding adequately in the defense view, then I should at least be apprised about it so that I also know that it's something that we need to address at the status conference or perhaps advance the case or enter some sort of order so that we can make sure that the case moves forward expeditiously.

I mean I've had complex cases with voluminous documents, thousands and thousands of documents, and double-digits of computer hard drives, and what I don't want to see happen in this case is that we spend two years of just trying to figure out what's in all of the documents and in all of the computers.  Thankfully, we're about five years ahead of where the technology was in that case and hopefully, that will assist everybody in their search.

So, let's move this forward, then.  Okay?  And the defense should be providing the Government by next Friday, which would be the 12th, with that list of attorney and law firm names.

Does the Government have an inventory of the seized materials?  I imagine you must have some sort of inventory. Something has to be created when the warrants are executed.

MR. SCHAEFFER:  Yes, Your Honor.  We have an inventory of the computers seized and, also, a number of sketches of the exact locations where they were seized.

THE COURT:  Okay.  Has that been provided to the

Proceedings                                   23

defense?

MR. SCHAEFFER: And that has not been provided to defense.

THE COURT: Well, it might be helpful if that is provided to the defense.

If you could do that.

MR. SCHAEFFER: I could do that today.

THE COURT: Today. Fabulous. Okay.

(Pause in the proceedings.)

THE COURT: Now, I assume that when you say you're going to have a filter team, that's going to be a team separate and apart from the trial attorneys.

MR. SCHAEFFER: With respect to -- for the computers, what we're looking to do is have an investigative agency filter agent who will remove those documents.

It is not likely in this case that we are going to have an entirely separate filter team of prosecutors that reviews every document prior to me and anybody else on trial treatment reviewing them.

THE COURT: Well, that's a good start.

Let's start with this, because this also is not the situation, as far as I know, where search warrants were executed at the offices of attorneys representing any of the defendants in this case; am I correct?

Proceedings                                          24

MR. SCHAEFFER:  That is correct.

THE COURT:  Okay.  So, that does bring this a little bit into an area where perhaps it may not be necessary to have a whole team of attorneys, as was done in the Simels case.

MR. SCHAEFFER:  Right.

THE COURT:  But at least this is a start.

Now, the other question will be how long did you anticipate, Mr. Schaeffer, that it will take the filtering agents to or agency to complete its task once you get that information?

MR. SCHAEFFER:  That, to me that's a separate issue from when we turn the materials over to defense attorneys because we are intending to turn over to defense attorneys everything we seized before we look at it regardless of whether it has anything that may be privileged on it.  The privilege issue is simply for our preparation for trial.

THE COURT:  So, that I am 100 percent clear, the Government is turning over all of these computer hard drives and documents without having reviewed it first yourselves?

MR. SCHAEFFER:  Yes.

MS. FRITZ:  Your Honor, I am --

THE COURT:  I don't see that that's -- if they haven't looked at it, then they don't know what's on it.

MS. FRITZ:  It depends on what Mr. Schaeffer means when he says 'turning over to the defense'.

Proceedings                                          25

There were, let's just say, for example, 12 different computers used by 12 different individuals at the company.  Is every individual going to then receive access to the computer that Mr. Metter was using at the company with all of his privileged materials?  The only way that that would be permissible, in my opinion, is if Mr. Schaeffer were able to give the computer back to the individual it came from.  And I have no way of knowing whether that's doable in terms of shared servers or access among and between the defendants.

I certainly don't agree to a wholesale production to this entire table of everything that was seized from that office.  There are defendants at this table that weren't employees, perhaps.  Or at least, not actively involved in Spongetech's business.

THE COURT:  I just want to make sure.  I know that I had designated Ms. Fritz as sort of the mouthpiece, if you will, for the defense group.

I gather that all of you are pretty much in agreement with the arguments that she is making.

ALL DEFENSE COUNSEL:  Yes, Your Honor.

MS. FRITZ:  Yes, Your Honor.

THE COURT:  Okay.  That is a rather delicate issue.

Mr. Schaeffer?

MR. SCHAEFFER:  I don't think it is.  I think the Government is obligated to provide the evidence it has seized

Proceedings                                          26

to the defendants, so...

THE COURT:  But if Mr. Metter, for example, has privileged conversations with an attorney that he's not shared with any of the other defendants, I mean, frankly, if he shares his conversation with another attorney, then the privilege is gone, unless that attorney is also representing the other individuals to whom the conversation is being conveyed.

And to the extent that there are other individuals here that cannot be said to have been represented by any of the attorneys who are representing any of the executives here, that is a problem.

MS. FRITZ:  Your Honor, if I can add one other thing.

THE COURT:  I mean, perhaps -- I'm sorry.

I have not myself seen diagrams of the locations that were searched or the inventories of the computers. Perhaps as an initial matter, until the privilege issue is resolved, perhaps the discovery can be done in such a way that only the computers coming out of Mr. Metter's office go to Mr. Metter, but that also doesn't resolve the issue of any shared drives.

MS. FRITZ:  And we have no idea at this point what's on the different computers and the extent to which they overlap.

Victoria A. Torres Butler, CRR
Official Court Reporter

Proceedings                                          27

I just want to raise another issue.

It is very troubling to me that the Government would take the position that they can come in and seize a computer with probably years worth of confidential completely irrelevant material on it and then disseminate it out to a group of other individuals.  This is completely apart from attorney-client privilege.  This is really a matter of irrelevant personal confidential data.  Heaven only knows what's on there.  Financial data, personal information, relationship information.

That cannot -- that can't be permissible, Your Honor.

THE COURT:  Well, personal financial data.  Personal financial data might be relevant to the action here.

MS. FRITZ:  That's possible, but it's also possible that it's really entirely personal.  And I don't know of any information here, I just want to say it.

(Pause in the proceedings.)


MS. FRITZ:  Your Honor, we're just torturing ourselves over the various possibilities of what is on the computers that were used by these individuals for years.

THE COURT:  But I also haven't heard any suggestions from the defense as to how, perhaps -- I mean, the Government's response just seems to be, okay, I'm going to

Proceedings                                                    28

throw everything out there and you guys sort it out because we haven't looked at it.

I personally, having been a prosecutor, don't understand this.  I don't understand how a prosecutor gives out materials without having looked at it.  And we're talking about lots of documents and ultimately, I mean, the Government has the burden of proof here.

Now, I'm not saying it's not right for the Government to hold back stuff that should be discoverable, I don't want to be interpreted as saying that.  But by the same token, I think that these are real issues and it seems to me that it just hasn't been carefully thought out as to how to address these individual issues, frankly; either the Government on its own or, you know, just sitting down with the attorneys and trying to hash out some sort of formula that might work.

MS. FRITZ:  Your Honor, if the -- I really was not aware that the Government's approach to the issue was going to be quite this haphazard.  This issue wouldn't exist had the materials been obtained by subpoena so that there was an attorney making sure that Mr. Metter's personal materials weren't part of the production.  But that's not how the Government did it here.  So, obviously, we have the issue.

If the Government is not going to take any steps to review or filter and at the same time is taking the position

Proceedings                                                    29

that its approach to discovery is just to give everything to everybody, if that's their position, then the only -- the only thing I can think to do is to now almost go backwards and have each of those computers reviewed by the appropriate Counsel.

For example, I would review any computer that was seized from Mr. Metter.  A Spongetech Counsel would get the hard drive of Spongetech's other hard drives and go through, and effectively produce or identify those things that are absolutely irrelevant to the case and those that are privileged.  And it's almost a reverse production so that we're not just willy-nilly distributing all of the contents of dozens and dozens of computers, of dozens of employees, many of which aren't even involved in this case.

THE COURT:  Mr. Schaeffer.

MR. SCHAEFFER:  Your Honor, the Government completely objects to this entire line of thinking because it puts the Government in the position of potentially limiting its discovery of documents to defendants based on what a co-defendant's attorney is saying is appropriate, irrelevant, and the like.  It could be, it could be a Brady violation without me having any role whatsoever in it.

The Government's position on why it's turning over all of the materials is because each defendant is entitled to review the Government's evidence to determine whether there's something in there they want to use that's to their benefit.

Proceedings                                      30

And it's not for a co-defendant to then filter that and prevent a defendant from looking at the Government's -- I've never heard of it.

THE COURT:  Well, Mr. Schaeffer, I think you're twisting it in a way that it shouldn't be twisted; and that is, that the only documents that the Government would be precluded from looking at to make determinations as to whether it's relevant to the Government's case, or <u>Brady</u>, or <u>Giglio</u>, or any other type of discoverable information would be information that's arguably privileged.

To the extent that the defense says, well, we don't think that this particular information is relevant and that it shouldn't be produced to the co-defendant, that doesn't mean that the Government is then just relieved of its responsibility to take a look at it to see whether you agree with that or not.  You have everything.  You have everything.

So, really, the only thing that the Government needs to assure itself of, number one, that it doesn't look at is privileged information.  Attorney-client, attorney work-product information, okay?  That is the one thing.

That doesn't mean, Mr. Schaeffer that you are estopped or your prevented from, you know, fulfilling your obligations by making sure that you've seen everything that's in there and make sure that, in fact, everything that should be turned over is turned over.  That's your obligation.  That

Proceedings                                                31

is your obligation.

And quite honestly, I'm feeling a little bit uncomfortable on this position that the Government is taking because to the extent that there might be Brady information, information that tends to exculpate any defendant, I would think the Government wants to know that on your own, proactively, because you are quasi-judicial officers who have the obligation to do justice.  And I will never believe that that is a hokey term.

You have an obligation to make sure that the person you are prosecuting is indeed guilty of the charges.  And if that means you have to lock at every piece of paper, you look at every piece of paper.  That's why the Government has the resources that it has.  You have agents, you have other members of your office.

And that doesn't relieve you of your obligation to make sure that when you look at those documents, if the defense says these are the things we object to having to turn over to co-defendants for those reasons, and you have to specify what the reason is.  I don't see what's so difficult from you then pinpointing those particular things and looking at them and making an independent determination yourself as to whether it's Brady or Giglio or whatever.  And if you disagree, then that's what you have a judge here for.  To make a ruling.  Make a motion, and I'll make a ruling.

Proceedings                                          32

I don't understand the resistance of the Government. I think that the defense has presented at least an alternative that may be workable.  It may delay the turning over of everything to everybody, but it provides assurance that something doesn't come out that really shouldn't come out that creates some further problems in the case.  I mean, on the one hand, we do have an interest in making sure that everything moves long in a timely way.  But on the other hand, we can't also do it in a way that's going to jeopardize the quality of the work that's going to be done.

I'm really not understanding the resistance to this.

MR. SCHAEFFER:  I have no objection to setting up a procedure that we're defining as we talk here.  I'm not sure that the end result will be any different.

THE COURT:  Maybe not.  Maybe not.  But at least, I think, both the parties and the Court will be satisfied that any privileged information, any, you know, purely personal information that has really no bearing whatsoever on the case -- I mean, you know, if the e-mail is about the kids going to school or the kids being sick, really, I mean, obviously, that's irrelevant to everything here.  Okay?

But I think that the proposal sounds like something that, at least, might be doable.  I think that it's going to be important that the defense gets these inventories that show exactly which computer relates to whom, and that the defense

Proceedings                                                33

and that the defense identify, after you consult with your clients, that the defense identify for the Government, which ones you believe relate to Mr. Moskowitz, Mr. Tepfer, Mr. Metter, and so on, and to each defendant and make that initial review.

Then the Government can, you have specific documents you have look you can look at.  I don't see that that's unreasonable.

In some way it's putting it on its head by putting the burden on the defense, but by the same token I think they're going to be in a somewhat better position to identify what was attorney-client conversations and other information that they don't think necessarily is relevant without jeopardizing the Government's ultimate decision to the contrary.  So, I suggest you sit down and discuss the logistics of this.

Mr. Schaeffer, you said you can give the defense today the inventories and the sketches.  The SEC should post electronically, whether it's you or themselves.  To me it's a one-page letter; just what exactly it is that they did not provide for distribution as privileged and to specify whether they think it's privileged as work product or some other attorney-client situation.

What I would appreciate then, because it sounds like this is going to take quite a bit of time and I don't see the

Proceedings                                              34

point in unnecessarily wasting precious attorney time in just coming to court so that we can look at each other for a while and discuss just to say that we need more time to continue working on this, why don't we perhaps put this matter over for say 60 days.

And what I would like, however, is some sort of a status report, say by the end of this month.  Maybe by February 28th, perhaps the Government can provide a status report from their perspective.  And Ms. Fritz, perhaps you can provide us a joint status report on behalf of the defendants so that this way I can, to the extent that, you know, if it can be one joint letter.

MS. FRITZ:  Sure.

THE COURT:  I would love that.  It's less filings. It's less stuff that I have to read.

But to the extent that there are disagreements and so on, then the letter should just indicate that there are disagreements one way or another.  And so, this way I'm alerted as to whether or not if the parties want to advance the case, I'm open to advancing the case, I have no problem with that.  And if you reach some sort of an impasse and you need my intervention to resolve the impasse, just let me know, okay?  I certainly want to assist the parties in making sure that this discovery goes through as quickly as possible.  I think that if there's more communication sort of informally,

Proceedings                                                  35

you sit down and you talk this out, I have a feeling that you're going to be able to work something out here.  Okay?

MR. SCHAEFFER:  And just so I understand, because this is, at least for me somewhat of a novel issue.

Essentially what we're talking about here is a defendant will have the burden of providing to the Government, once they have those inventories, information, documents, evidence, that they think a co-defendant should not be entitled to see.

THE COURT:  Correct.

MR. SCHAEFFER:  And then the Government will make a determination or will raise with the Court if it has an issue on whether the Government thinks that the co-defendants should be entitled to that.

THE COURT:  Well, I think that's a two-fold, actually.  One, whether it's privileged that might not be picked up by the filter, right?  Because on the one hand that's the other thing that the attorneys have to give by next week, by the 12th.  The defense attorneys have to give by the -- I'm sorry, by next Friday the 11th, is the names of attorneys and law firms so that the Government, as an initial matter before turning over even to the individual defendants, okay, anything that might be privileged.  All right?  That's step number one in this process, as I see it, based on our discussions here today.

Proceedings                                                36

So, first the defense attorneys provide lists of attorneys and law firms.

The Government will do its filter.

And then, this is really sort of a check on how effective that filter is in terms of any privilege, attorney privilege situation.

Then, the individual attorneys will identify -- if you can do it by the 11th, too, identify which computers, which hard drives go to which client.  Then this way the Government knows, as the filtering process is completed, to which attorney, which defendant the particular hard drive can be disclosed so that the discovery can be done on a rolling bases as opposed to waiting until everything is 100 percent done and you can kind of keep things moving, okay?

So, it's really a three-step process.  First, you've got to get the names of the attorneys and the law firms, the filter, and then, provide to the individual defendants.  And they will provide whatever listing of documents they feel may have been missed by the filter or they feel is irrelevant or that shouldn't be turned over to co-defendants.

MS. FRITZ:  Your Honor, it may well be, given the fact that we haven't seen an inventory yet and we're only now getting it.  It may well be that we're going to take the position that some of the seized material was well outside the scope of the warrant.

Proceedings                                           37

THE COURT:  We'll deal with motions later.

MS. FRITZ:  Yeah.

THE COURT:  All right?  That we'll deal with when we deal with the admissibility issues.  And if you want to make motions in that regard, then we will deal with that at a later date.  Right now I think we need to make sure that the parties have the discovery so that when you get to the point of making motions, we can do all the motions at one time and not do it in piecemeal fashion.

MR. MOSKOWITZ:  Your Honor, if I may?  Avi Moskowitz on behalf of Mr. Tepfer.

THE COURT:  Yes, sir.

MR. MOSKOWITZ:  I don't know if this is on (indicating).

THE COURT:  If the green light is on -- there you go.  Much better.

MR. MOSKOWITZ:  I think there are two additional complicating issues.

I believe that the Government may have seized computers belonging to corporate employees who are not defendants, who yet may also have attorney-client privileged materials on there.  For example, they may have been involved in the SEC investigation but have not been indicted.

Those individuals, too, have a right to have their privileged materials, perhaps, not turned over.

Proceedings                                      38

In addition, we live in the 21st century where there are spousal communications that are likely to have been on a computer.  And that's subject to a different type of privilege, but nonetheless privilege.  And I think those -- so, when we talk about turning over or advising the Government on things that they need to filter, I think we have to probably include that in there.

THE COURT:  But I mean, you may also have people talking to their Rabbi or their priest or whatever.  We all know what the legal privileges are.

I think that the first concern here is attorney-client communications.  And then, to the extent that there may be other privileges, and I think it's really since the Government's going to be turning it over without first having looked at it, then that's why it's going to be up to the defense then to say, well, we think that this falls under a spousal privilege.  And it may be that then that's going to have to be determined by way of motion.

Maybe the Court has to, not that I'm inviting you to do more motion practice, but right now, we're working in the realm of speculation because we just don't know.  But the first order of business, which I think is the most critical one, is identifying attorney-client privileges.  And the Government has said they're going to turn this over without looking at it.

Proceedings                                                  39

When the defense has identified documents that they think should not be turned over, then if we need to address how the Government deals with it, we address it. But I think the entire point is for the Government to be able to look at it. I mean, if it comes to spousal privilege, I don't know whether the Government should necessarily be precluded from looking at it and arguing it because perhaps it's res gestae. We don't know that. We don't know that. And whether or not those statements get used at trial is a whole different issue. That's motions in limine. And we're not anywhere near that yet.

So, it seems to me this is a fairly reasonable process. I think it's going to be somewhat manageable, albeit extend the discovery period a little longer, but hopefully we'll address most of the concerns that the parties will have.

MR. SCHAEFFER:  And Your Honor, if I could just add that to my knowledge the Government has not reviewed any attorney-client privileged documents. The Government will meet all of its discovery obligations and the Government will turn over to the defendants any Brady material in its possession that it discovers.

THE COURT:  All right.

Is there anything else that relates to all the defendants?  Because I do have two separate requests, one is actually as to Mr. Cavanagh.

Proceedings                                          40

There was a request that Mr. Cavanagh be permitted to file a motion for severance on February 11th.  And I understand the Government has no objection to that.  That's fine.

MR. SCHAEFFER:  And that's consistent with what I expect to be a similar motion by a co-defendant.

THE COURT:  That's correct.  That's correct.  So certainly, that's not a problem.

And there is an application on behalf of --

MS. FRITZ:  Is that the travel request, Your Honor?

THE COURT:  Yes.

MS. FRITZ:  To travel later this month.

There is no objection from Mr. Schaeffer.

THE COURT:  And I believe there's none, also, from Pre-Trial Services.

So, that application is granted.

MS. FRITZ:  Thank you.

THE COURT:  There is also an application, I think, for Mr. Eisenberg.

MR. MERINGOLO:  Yes, Your Honor.

THE COURT:  Yes.

MR. MERINGOLO:  John Meringolo for Mr. Eisenberg.

Mr. Eisenberg is the only defendant under electronic monitoring and we would like to have an opportunity to get that released.  You know, because he's a 66-year old

Proceedings                                    41

defendant, this is the first time he's ever been charged with a crime and he's one of the lower level defendants.  He just doesn't have the resources or, I guess, anyone else that really would come and sign for him.

He's under psychiatric treatment, which he has to get permission all the time to go, as well as he sees a number of doctors.  He's absolutely not a risk of flight.  He's attended every single court appearance since being released, of which he did approximately 30 days in prison.  And during those 30 days he had a few incidents that happened.

We think it's a reasonable request that he be given -- that he be taken off the electronic monitoring.

THE COURT:  Mr. Schaeffer?

MR. SCHAEFFER:  I would note that co-defendant Thomas Cavanagh is also on electric monitoring, number one.

And number two, to the extent that defense counsel is making a bail argument here, I believe all of these issues were addressed at the initial arraignment in which the decision was made based on his particular circumstances to place him on electronic monitoring.  Or at a subsequent bail proceeding in which, I'm not certain I remember, in which it was agreed that he would be released from jail in order -- as long as he was on electronic monitoring.

So, the Government's not of the view that there is any difference in his circumstances today that would entitle

Proceedings                                                    42

him or would make the Government comfortable with his release without this post-monitoring.

THE COURT:  I don't see any reason other than it's some inconvenience for him to be on electronic monitoring.  If he's got doctors appointments, he needs to advise Pre-Trial Services and let them know this he's got those appointments.

MR. MERINGOLO:  Your Honor, if he's able to find a financially responsible person to sign on the bond?

THE COURT:  Well, as I said on the order initially denying your application, I mean, that's something that you should discuss in advance with the Government, have the suretor appear in the Government's office and provide their financial information.  Perhaps this might give the Government a different comfort level.

I don't think that Mr. Schaeffer is averse to considering something like that.  It certainly would enhance the risk of some financial consequence if Mr. Eisenberg were to flee or not appear in court.

MR. SCHAEFFER:  I did discuss that with defense counsel.

The only thing I would note is that it's something that requires some scheduling on my part because in this particular case what I have seen is suretors appear that have a relationship to Spongetech.  And therefore, I'm not comfortable speaking to them without an agent present.  So, it

Proceedings                                    43

just requires scheduling.  It can't be something that, you know, you show up or just call me an hour in advance and say 'can you see a suretor.'  The only thing I've requested from defense counsel --

THE COURT:  Well, that's reasonable.  That's a reasonable request.  You can't just go and pop up the same day and you have somebody available to speak.

And I'm not so sure that it is appropriate to have as a suretor somebody who's got some relationship to the case, whether it's to Spongetech or otherwise.

So, the request is denied.

Anything further?  Mr. Rosenberg.

MR. ROSENBERG:  Yes.  Richard Rosenberg on behalf of Mr. Speranza.

Mr. Speranza is only charged in a testimonial count in the indictment.  He's not charged in the subsequent SEC violations or fraud or conspiracy.

Would Your Honor then entertain a severance motion in the next 30 days or so on behalf of Mr. Speranza?

THE COURT:  Well, I mean, if you want to make the motion, I'm not going to preclude any Counsel from making the motion.  And I'll decide it in turn.

MR. ROSENBERG:  Okay.

THE COURT:  Okay?

MR. ROSENBERG:  Thank you.

Proceedings                                    44

THE COURT:  And obviously, if the Government wants to address all of those together, we can just wait to have all of these, all of the motions together.  I likely will decide them all together anyway.

MR. SCHAEFFER:  I think the only thing we're left with then, I think is to set a date.  I think you were talking about a 60-day.

THE COURT:  Yes.  I'm likely going to be on trial, so probably only Fridays will be open.

THE COURTROOM DEPUTY:  April 6th, at noon.

THE COURT:  April 6th at noon.

Is that good for everyone?

MR. MERINGOLO:  A moment, Your Honor.

THE COURT:  Sure.

(Pause in the proceedings.)

MR. MERINGOLO:  Your Honor, John Meringolo for Mr. Eisenberg.  I teach a class at law school that morning, I teach on Wednesdays.

THE COURT:  Friday, April 8th.

MR. MERINGOLO:  That's good for me, Your Honor.

THE COURT:  Is the morning okay for everyone?

ALL:  Yes, Your Honor.

THE COURT:  At 10:00 o'clock.

ALL:  Yes, Your Honor.

Victoria A. Torres Butler, CRR
Official Court Reporter

Proceedings                                          45

THE COURT:  Mr. Schaeffer, is that good for you?

MR. SCHAEFFER:  Yes.

THE COURT:  All right.

Do the defendants consent to the exclusion of time?

ALL:  Yes, Your Honor.

THE COURT:  All right.

Time is excluded on consent, this has also been designated a complex case and in the interests of justice for reasons stated on the record.

Thank you.

ALL:  Thank you, Your Honor.

THE COURT:  Oh, the status letter, by February 28th.

MS. FRITZ:  Yes, Your Honor.

THE COURT:  On the status of discovery, please.

MS. FRITZ:  Yes.

THE COURT:  Thank you.


(WHEREUPON, the proceedings were adjourned to April 8th, 2011, at 10:00 a.m.)


*   *   *

| ' | 6 | |
|---|---|---|

**'can** [1] - 43:3
**'turning** [1] - 24:25

**1**

**10-CR-00600(DLI** [1] - 1:3
**10-CR-60** [1] - 3:10
**100** [2] - 24:17, 36:13
**10004** [2] - 2:18, 2:20
**10017** [2] - 1:23, 2:5
**10018** [1] - 2:8
**10019** [1] - 2:11
**10107** [1] - 2:15
**10:00** [3] - 1:8, 44:24, 45:19
**10:06** [1] - 3:3
**11** [1] - 12:15
**11201** [1] - 1:19
**11th** [3] - 35:20, 36:8, 40:2
**12** [2] - 25:1, 25:2
**12th** [2] - 22:17, 35:19
**1372** [1] - 2:7
**1402** [1] - 2:7
**1501** [1] - 2:11
**15th** [2] - 12:7, 12:10
**1790** [1] - 2:10
**1931** [1] - 2:14
**19th** [1] - 2:17

**2**

**2010** [2] - 12:13, 20:10
**2011** [3] - 1:7, 6:10, 45:19
**21st** [1] - 38:1
**22nd** [1] - 11:7
**250** [1] - 2:14
**25th** [1] - 6:10
**26** [2] - 2:17, 2:20
**26th** [1] - 2:4
**271** [1] - 1:18
**27th** [1] - 20:10
**28th** [2] - 34:8, 45:12

**3**

**30** [3] - 41:9, 41:10, 43:19

**4**

**4** [1] - 1:7
**4th** [1] - 1:22

**5**

**57th** [1] - 2:14
**5th** [1] - 12:13

**6**

**60** [1] - 34:5
**60-day** [1] - 44:7
**613-2324** [1] - 2:23
**613-2607** [1] - 2:23
**66-year** [1] - 40:25
**67** [1] - 12:11
**6th** [2] - 44:10, 44:11

**7**

**718** [2] - 2:23
**767** [1] - 2:4
**780** [1] - 1:22

**8**

**8th** [2] - 44:20, 45:19

**9**

**97** [1] - 8:12

**A**

**a.m** [3] - 1:8, 3:3, 45:19
**abandoned** [1] - 20:25
**able** [5] - 7:24, 25:6, 35:2, 39:4, 42:7
**absolutely** [2] - 29:9, 41:7
**access** [4] - 14:11, 14:17, 25:3, 25:9
**according** [1] - 11:12
**accounts** [1] - 14:12
**acknowledge** [2] - 6:2, 6:9
**acknowledging** [1] - 11:2
**acoustics** [1] - 6:7
**action** [1] - 27:14
**actively** [1] - 25:13
**add** [5] - 6:25, 14:20, 20:8, 26:13, 39:16
**addition** [2] - 19:18, 38:1
**additional** [1] - 37:17
**address** [10] - 6:21, 9:1, 11:9, 14:15, 22:3, 28:13, 39:2, 39:3, 39:15, 44:2
**addressed** [4] - 11:1, 11:3, 12:2, 41:18
**addressing** [1] - 13:7
**adequately** [1] - 22:1
**adjourned** [1] - 45:18
**admissibility** [1] - 37:4
**advance** [4] - 22:4, 34:19, 42:11, 43:2
**advancing** [1] - 34:20
**advise** [2] - 5:18, 42:5
**advising** [1] - 38:5
**agency** [2] - 23:16, 24:9
**agent** [2] - 23:16, 42:25
**agents** [2] - 24:9, 31:14
**ago** [2] - 10:5, 10:10
**agree** [2] - 25:10, 30:15

**agreed** [1] - 41:22
**agreement** [2] - 11:10, 25:19
**ahead** [1] - 22:12
**aided** [1] - 2:25
**al** [2] - 1:8, 3:11
**albeit** [1] - 39:13
**alerted** [1] - 34:19
**ALL** [6] - 6:16, 25:20, 44:23, 44:25, 45:5, 45:11
**almost** [2] - 29:3, 29:10
**alternative** [1] - 32:2
**AMERICA** [1] - 1:3
**Andrew** [2] - 2:7, 4:11
**anticipate** [1] - 24:8
**anyway** [2] - 15:3, 44:4
**apart** [3] - 14:10, 23:13, 27:6
**appear** [7] - 5:14, 10:10, 19:16, 20:25, 42:12, 42:18, 42:23
**appearance** [1] - 41:8
**appearances** [1] - 3:12
**appearing** [1] - 5:12
**application** [5] - 5:14, 40:9, 40:16, 40:18, 42:10
**applications** [1] - 14:3
**appointments** [2] - 42:5, 42:6
**appreciate** [3] - 6:12, 10:25, 33:24
**apprised** [1] - 22:2
**approach** [2] - 28:18, 29:1
**appropriate** [4] - 16:17, 29:4, 29:19, 43:8
**April** [4] - 44:10, 44:11, 44:20, 45:19
**area** [1] - 24:3
**arguably** [1] - 30:10
**arguing** [1] - 39:7
**argument** [1] - 41:17
**arguments** [1] - 25:19
**arising** [1] - 11:25
**arraignment** [1] - 41:18
**assess** [1] - 18:10
**assigned** [1] - 15:17
**assist** [2] - 22:14, 34:23
**Assistant** [1] - 1:20
**associate** [1] - 18:18
**ASSOCIATES** [2] - 2:3, 2:10
**assume** [5] - 11:21, 11:22, 14:6, 15:17, 23:11
**assuming** [1] - 11:20
**assurance** [1] - 32:4
**assure** [1] - 30:18
**attended** [1] - 41:8
**attorney** [42] - 7:6, 9:1, 9:6, 9:11, 9:19, 10:1, 10:23, 13:2, 13:17, 14:13, 14:24, 15:10, 15:15, 15:16, 16:7, 17:8, 17:9, 18:17, 18:20, 19:1, 19:24, 20:12, 20:15, 20:19, 22:17, 26:3, 26:5, 26:6, 27:7, 28:21, 29:19, 30:19, 33:12, 33:23, 34:1, 36:5, 36:11, 37:21, 38:12, 38:23, 39:18
**Attorney** [2] - 1:17, 1:20
**attorney-client** [24] - 9:1, 9:6, 9:11, 9:19, 10:1, 10:23, 13:2, 13:17, 14:13,

All Word

2

14:24, 15:10, 15:15, 16:7, 18:20, 19:1, 19:24, 27:7, 30:19, 33:12, 33:23, 37:21, 38:12, 38:23, 39:18

**attorneys** [25] - 7:7, 7:12, 7:16, 7:25, 13:8, 13:14, 16:5, 18:18, 19:16, 20:4, 20:11, 23:13, 23:24, 24:4, 24:12, 24:13, 26:11, 28:15, 35:18, 35:19, 35:21, 36:1, 36:2, 36:7, 36:16

**attorneys'** [1] - 11:19

**audience** [1] - 6:6

**available** [8] - 7:1, 7:12, 9:17, 9:20, 9:24, 13:8, 19:10, 43:7

**Avenue** [2] - 1:22, 2:4

**averse** [1] - 42:15

**Avi** [2] - 4:13, 37:10

**aware** [1] - 28:18

## B

**backwards** [1] - 29:3

**bail** [2] - 41:17, 41:20

**Baker** [1] - 4:4

**BAKER** [3] - 2:5, 4:4, 4:8

**based** [6] - 14:5, 15:6, 15:14, 29:18, 35:24, 41:19

**bases** [1] - 36:13

**basis** [2] - 14:15, 15:11

**Bates** [1] - 17:5

**Batista** [3] - 5:12, 5:13, 5:18

**BATISTA** [1] - 2:19

**bear** [1] - 10:17

**bearing** [1] - 32:18

**became** [1] - 19:8

**BEFORE** [1] - 1:13

**behalf** [6] - 5:12, 34:10, 37:11, 40:9, 43:13, 43:19

**belonging** [1] - 37:20

**bench** [2] - 5:1, 5:7

**benefit** [1] - 29:25

**best** [1] - 21:10

**better** [2] - 33:11, 37:16

**between** [4] - 8:18, 21:12, 21:24, 25:9

**beyond** [1] - 7:14

**bit** [5] - 5:23, 18:5, 24:3, 31:2, 33:25

**bond** [1] - 42:8

**BOOK** [1] - 2:6

**boxes** [1] - 12:12

**Brady** [5] - 29:20, 30:8, 31:4, 31:23, 39:20

**BRAFMAN** [1] - 2:3

**brief** [1] - 11:12

**bring** [1] - 24:2

**Broadway** [4] - 2:7, 2:10, 2:17, 2:20

**Brooklyn** [2] - 1:6, 1:19

**build** [1] - 9:22

**burden** [3] - 28:7, 33:10, 35:6

**business** [3] - 11:25, 25:14, 38:22

**Butler** [1] - 2:22

**BY** [4] - 1:19, 1:23, 2:18, 2:21

**BY:AVRAHAM** [1] - 2:8

**BY:JOHN** [1] - 2:12

**BY:MARK** [1] - 2:5

**BY:RICHARD** [1] - 2:15

## C

**Cadman** [1] - 1:18

**cannot** [2] - 26:10, 27:11

**carefully** [1] - 28:12

**case** [26] - 3:8, 6:25, 7:7, 7:21, 8:12, 11:11, 14:7, 15:17, 16:18, 22:4, 22:5, 22:10, 22:13, 23:17, 23:25, 24:4, 29:9, 29:13, 30:8, 32:6, 32:19, 34:20, 42:23, 43:9, 45:8

**cases** [1] - 22:7

**CAUSE** [1] - 1:12

**Cavanagh** [8] - 2:17, 5:4, 5:6, 12:9, 39:25, 40:1, 41:15

**center** [3] - 8:1, 13:6, 13:15

**century** [1] - 38:1

**certain** [2] - 9:6, 41:21

**certainly** [5] - 19:13, 25:10, 34:23, 40:8, 42:16

**chance** [1] - 6:14

**charged** [3] - 41:1, 43:15, 43:16

**charges** [1] - 31:11

**check** [1] - 36:4

**circumstances** [2] - 41:19, 41:25

**civil** [3] - 14:1, 14:7, 15:17

**claimed** [1] - 14:9

**clarification** [1] - 15:13

**clarify** [1] - 15:23

**class** [1] - 44:18

**clear** [4] - 5:21, 14:12, 16:24, 24:17

**clear-cut** [1] - 14:12

**clearly** [1] - 9:23

**client** [27] - 3:20, 9:1, 9:6, 9:11, 9:19, 10:1, 10:23, 13:2, 13:17, 14:13, 14:24, 15:10, 15:15, 16:7, 17:9, 18:20, 19:1, 19:24, 27:7, 30:19, 33:12, 33:23, 36:9, 37:21, 38:12, 38:23, 39:18

**clients** [1] - 33:2

**cluttering** [1] - 21:11

**co** [9] - 29:19, 30:1, 30:13, 31:19, 35:8, 35:13, 36:20, 40:6, 41:14

**co-defendant** [5] - 30:1, 30:13, 35:8, 40:6, 41:14

**co-defendant's** [1] - 29:19

**co-defendants** [3] - 31:19, 35:13, 36:20

**comfort** [1] - 42:14

**comfortable** [2] - 42:1, 42:25

**coming** [2] - 26:20, 34:2

**communication** [3] - 21:10, 21:23, 34:25

**communications** [3] - 11:23, 38:2, 38:12

**compact** [2] - 12:11, 12:15

**company** [3] - 11:25, 25:3, 25:4

**complete** [2] - 12:3, 24:9

**completed** [1] - 36:10

**completely** [3] - 27:4, 27:6, 29:16

**complex** [2] - 22:7, 45:8

**complicating** [1] - 37:18

**computer** [14] - 18:7, 18:8, 18:16, 18:19, 19:1, 20:23, 22:9, 24:18, 25:4, 25:7, 27:3, 29:5, 32:25, 38:3

**Computer** [1] - 2:25

**Computer-aided** [1] - 2:25

**computerized** [2] - 2:25, 11:16

**computers** [23] - 7:22, 9:3, 9:7, 9:13, 9:14, 9:17, 9:20, 14:11, 14:17, 19:20, 20:19, 22:12, 22:23, 23:15, 25:2, 26:17, 26:20, 26:24, 27:22, 29:4, 29:12, 36:8, 37:20

**concern** [2] - 10:13, 38:11

**concerned** [5] - 8:17, 8:22, 9:10, 19:8, 20:17

**concerns** [2] - 12:18, 39:15

**concrete** [1] - 10:14

**conduct** [1] - 20:2

**CONFERENCE** [1] - 1:12

**conference** [14] - 3:10, 5:20, 7:5, 8:17, 8:18, 8:20, 11:7, 11:11, 12:8, 12:14, 13:3, 13:7, 22:4

**confidential** [2] - 27:4, 27:8

**conflict** [1] - 5:19

**confuse** [1] - 14:8

**confused** [1] - 13:3

**consent** [2] - 45:4, 45:7

**consequence** [1] - 42:17

**considered** [1] - 15:8

**considering** [1] - 42:16

**consistent** [1] - 40:5

**conspiracy** [1] - 43:17

**consult** [1] - 33:1

**contain** [2] - 10:23, 18:8

**contained** [1] - 12:11

**containing** [2] - 12:11, 12:15

**contents** [1] - 29:11

**context** [1] - 9:2

**continue** [1] - 34:3

**Continued** [1] - 2:2

**contrary** [1] - 33:15

**conversation** [2] - 26:5, 26:7

**conversations** [3] - 15:7, 26:3, 33:12

**conveyed** [1] - 26:8

**copied** [1] - 9:24

**copies** [3] - 12:11, 19:10, 19:11

**copy** [3] - 8:1, 13:6, 13:15

**corporate** [1] - 37:20

**correct** [9] - 8:5, 11:19, 18:24, 23:25, 24:1, 35:10, 40:7

**correcting** [1] - 16:6

**correspondence** [1] - 21:12

**counsel** [12] - 3:12, 3:18, 6:14, 9:22, 11:20, 11:24, 13:20, 18:17, 19:15, 41:16, 42:20, 43:4

**Counsel** [6] - 11:24, 21:12, 29:4, 29:6, 43:21

**COUNSEL** [1] - 25:20

**count** [1] - 43:15

**COURT** [95] - 1:1, 3:5, 3:8, 3:17, 3:24, 4:2, 4:6, 4:10, 4:15, 4:22, 5:2, 5:8, 5:17, 5:23, 6:1, 6:17, 6:22, 7:15, 8:4, 8:8, 8:13, 10:4, 10:8, 10:17, 11:6, 13:18, 13:25, 15:2, 15:16, 16:9, 16:11, 16:16, 16:20, 17:17, 17:20, 17:24, 18:3, 18:21, 19:3, 20:3, 20:9, 21:2, 21:5, 21:8, 22:25, 23:4, 23:8, 23:11, 23:21, 24:2, 24:6, 24:17, 24:22, 25:15, 25:22, 26:2, 26:15, 27:13, 27:23, 29:14, 30:4, 32:15, 34:14, 35:10, 35:15, 37:1, 37:3, 37:12, 37:15, 38:8, 39:22, 40:7, 40:11, 40:14, 40:18, 40:21, 41:13, 42:3, 42:9, 43:5, 43:20, 43:24, 44:1, 44:8, 44:11, 44:14, 44:20, 44:22, 44:24, 45:1, 45:3, 45:6, 45:12, 45:14, 45:16
**court** [5] - 3:1, 5:19, 34:2, 41:8, 42:18
**Court** [15] - 2:22, 2:23, 5:23, 6:9, 8:20, 10:11, 12:9, 15:20, 17:25, 20:21, 21:14, 21:19, 32:16, 35:12, 38:19
**Courthouse** [1] - 1:5
**courtroom** [2] - 3:2, 6:8
**COURTROOM** [10] - 3:4, 3:9, 3:21, 4:3, 4:11, 4:17, 4:23, 5:4, 5:10, 44:10
**created** [2] - 14:5, 22:21
**creates** [1] - 32:6
**creating** [1] - 7:19
**crime** [1] - 41:2
**criminal** [3] - 3:9, 15:18, 21:11
**CRIMINAL** [1] - 1:12
**critical** [1] - 38:22
**CRR** [1] - 2:22
**CULBERTSON** [1] - 1:21
**cut** [1] - 14:12

## D

**data** [4] - 27:8, 27:9, 27:13, 27:14
**database** [9] - 7:20, 13:5, 13:12, 13:15, 13:16, 14:9, 15:25, 16:3, 17:22
**databases** [1] - 18:8
**date** [3] - 5:20, 37:6, 44:6
**dated** [1] - 6:10
**days** [4] - 34:5, 41:9, 41:10, 43:19
**deal** [4] - 37:1, 37:3, 37:4, 37:5
**dealing** [1] - 20:23
**deals** [1] - 39:3
**December** [1] - 20:10
**decide** [2] - 43:22, 44:3
**decision** [2] - 33:14, 41:19
**defendant** [14] - 1:9, 29:23, 30:1, 30:2, 30:13, 31:5, 33:4, 35:6, 35:8, 36:11, 40:6, 40:23, 41:1, 41:14
**DEFENDANT** [6] - 4:1, 4:9, 4:16, 4:21, 5:3, 5:9
**Defendant** [8] - 1:21, 2:3, 2:6, 2:10, 2:13, 2:16, 2:19, 12:9
**defendant's** [1] - 29:19
**defendants** [19] - 14:2, 23:25, 25:9,

25:12, 26:1, 26:4, 29:18, 31:19, 34:10, 35:13, 35:22, 36:17, 36:20, 37:21, 39:20, 39:24, 41:2, 45:4
**DEFENSE** [1] - 25:20
**defense** [51] - 3:18, 6:14, 7:7, 7:12, 7:25, 9:11, 9:22, 12:6, 12:17, 12:20, 12:22, 13:8, 13:14, 13:20, 15:2, 16:5, 16:18, 18:17, 19:15, 20:3, 20:11, 20:12, 20:14, 21:21, 21:24, 21:25, 22:1, 22:16, 23:1, 23:3, 23:5, 24:12, 24:13, 25:17, 27:24, 30:11, 31:18, 32:2, 32:24, 32:25, 33:1, 33:2, 33:10, 33:17, 35:19, 36:1, 38:16, 39:1, 41:16, 42:19, 43:4
**defense'** [1] - 24:25
**defining** [1] - 32:13
**delay** [3] - 13:8, 13:14, 32:3
**delicate** [1] - 25:22
**denied** [2] - 5:15, 43:11
**denying** [1] - 42:10
**DEPUTY** [10] - 3:4, 3:9, 3:21, 4:3, 4:11, 4:17, 4:23, 5:4, 5:10, 44:10
**deputy** [1] - 3:19
**described** [1] - 19:14
**designated** [3] - 7:5, 25:16, 45:8
**determination** [2] - 31:22, 35:12
**determinations** [1] - 30:7
**determine** [1] - 29:24
**determined** [1] - 38:18
**diagrams** [1] - 26:16
**difference** [1] - 41:25
**different** [7] - 25:2, 26:24, 32:14, 38:3, 39:9, 42:14
**difficult** [1] - 31:20
**digits** [1] - 22:9
**direct** [2] - 14:11, 14:17
**directly** [3] - 10:22, 16:12, 16:25
**disagree** [1] - 31:24
**disagreements** [2] - 34:16, 34:18
**disappeared** [1] - 9:8
**disc** [2] - 12:11, 12:15
**disclosed** [1] - 36:12
**discoverable** [3] - 12:24, 28:9, 30:9
**discovers** [1] - 39:21
**discovery** [13] - 6:12, 7:18, 8:19, 12:4, 26:19, 29:1, 29:18, 34:24, 36:12, 37:7, 39:14, 39:19, 45:14
**discretely** [1] - 14:16
**discuss** [4] - 33:15, 34:3, 42:11, 42:19
**discussed** [5] - 7:17, 14:25, 18:13, 19:18, 20:12
**discussing** [2] - 18:1, 19:5
**discussion** [1] - 7:4
**discussions** [1] - 35:25
**dispute** [2] - 15:5, 21:9
**disputed** [1] - 6:20
**disputes** [1] - 6:18
**disseminate** [1] - 27:5
**distributing** [1] - 29:11
**distribution** [1] - 33:21
**DISTRICT** [3] - 1:1, 1:1, 1:13

**District** [2] - 1:18, 5:13
**doable** [2] - 25:8, 32:23
**Docket** [1] - 3:10
**docket** [1] - 21:11
**docketed** [1] - 21:8
**doctors** [2] - 41:7, 42:5
**document** [6] - 14:22, 16:1, 17:5, 21:15, 23:19
**documentary** [1] - 12:4
**documents** [40] - 7:20, 11:13, 11:17, 11:18, 12:11, 12:12, 12:22, 13:10, 13:16, 13:19, 14:5, 14:24, 16:3, 16:7, 16:8, 16:13, 17:1, 17:6, 17:7, 17:23, 18:19, 18:20, 18:25, 19:1, 19:17, 21:16, 22:8, 22:11, 23:16, 24:19, 28:6, 29:18, 30:6, 31:17, 33:6, 35:7, 36:18, 39:1, 39:18
**DOJ** [1] - 14:16
**DOLAN** [1] - 2:16
**done** [9] - 8:3, 18:1, 18:12, 19:5, 24:4, 26:19, 32:10, 36:12, 36:14
**DORA** [2] - 1:13, 3:2
**double** [1] - 22:9
**double-digits** [1] - 22:9
**down** [5] - 16:21, 17:5, 28:14, 33:15, 35:1
**dozens** [6] - 9:3, 9:12, 9:16, 29:12
**drive** [2] - 29:7, 36:11
**drives** [9] - 8:1, 9:17, 9:23, 18:7, 22:9, 24:18, 26:22, 29:7, 36:9
**during** [1] - 41:9

## E

**E-mail** [1] - 2:24
**e-mail** [4] - 11:16, 14:12, 17:21, 32:19
**e-mails** [5] - 7:10, 7:19, 10:21, 14:18, 19:17
**early** [1] - 12:4
**East** [1] - 1:18
**EASTERN** [1] - 1:1
**Eastern** [1] - 1:18
**ECF** [1] - 21:8
**effective** [1] - 36:5
**effectively** [1] - 29:8
**Eisenberg** [8] - 2:10, 4:17, 4:19, 40:19, 40:22, 40:23, 42:17, 44:18
**either** [7] - 13:13, 16:4, 16:17, 17:9, 19:17, 21:9, 28:13
**electric** [1] - 41:15
**electronic** [5] - 40:23, 41:12, 41:20, 41:23, 42:4
**electronically** [4] - 6:11, 15:20, 21:15, 33:19
**eliminate** [1] - 20:1
**employees** [3] - 25:13, 29:12, 37:20
**employing** [2] - 18:15, 20:23
**end** [3] - 8:6, 32:14, 34:7
**enhance** [1] - 42:16
**enter** [1] - 22:4

enters [1] - 3:2
entertain [1] - 43:18
entire [3] - 25:11, 29:16, 39:4
entirely [3] - 16:8, 23:18, 27:16
entitle [1] - 41:25
entitled [3] - 29:23, 35:9, 35:14
ESQ [9] - 1:17, 1:19, 1:23, 2:5, 2:8, 2:12, 2:15, 2:18, 2:21
essentially [1] - 35:5
establish [1] - 11:8
establishment [1] - 11:14
estopped [1] - 30:22
et [2] - 1:8, 3:11
evidence [5] - 18:16, 20:23, 25:25, 29:24, 35:8
exact [1] - 22:24
exactly [7] - 15:20, 16:13, 17:1, 17:17, 17:18, 32:25, 33:20
example [4] - 25:1, 26:2, 29:5, 37:22
excluded [1] - 45:7
exclusion [1] - 45:4
exculpate [1] - 31:5
executed [2] - 22:21, 23:24
execution [1] - 12:12
executives [2] - 11:21, 26:11
exist [2] - 9:12, 28:19
expect [4] - 7:15, 7:23, 8:7, 40:6
expected [1] - 7:3
expeditiously [1] - 22:6
extend [1] - 39:14
extent [9] - 8:23, 26:9, 26:24, 30:11, 31:4, 34:11, 34:16, 38:12, 41:16

## F

F-R-I-T-Z [1] - 3:22
fabulous [1] - 23:8
fact [10] - 9:2, 10:6, 10:10, 10:25, 11:8, 12:17, 14:16, 19:19, 30:24, 36:22
facts [1] - 17:16
fair [1] - 21:19
fairly [1] - 39:12
falls [1] - 38:16
far [8] - 9:10, 9:18, 10:15, 11:22, 15:4, 20:17, 20:22, 23:23
fashion [1] - 37:9
Fax [1] - 2:23
February [4] - 1:7, 34:8, 40:2, 45:12
Federal [1] - 5:23
fell [1] - 17:8
felt [2] - 16:16, 17:1
few [1] - 41:10
figure [1] - 22:11
file [1] - 40:2
filed [1] - 14:1
filings [1] - 34:14
filter [15] - 18:18, 18:20, 18:23, 18:24, 23:12, 23:16, 23:18, 28:25, 30:1, 35:17, 36:3, 36:5, 36:17, 36:19, 38:6
filtering [2] - 24:8, 36:10

financial [6] - 7:19, 27:9, 27:13, 27:14, 42:13, 42:17
financially [1] - 42:8
fine [2] - 5:25, 40:4
finite [1] - 18:5
firm [1] - 22:18
firms [4] - 20:4, 35:21, 36:2, 36:16
first [18] - 6:3, 7:9, 8:4, 8:15, 8:17, 8:22, 9:18, 12:2, 12:20, 12:23, 16:20, 24:19, 36:1, 36:15, 38:11, 38:14, 38:22, 41:1
five [1] - 22:12
flee [1] - 42:18
flight [1] - 41:7
Floor [3] - 1:22, 2:4, 2:17
fold [1] - 35:15
folks [1] - 9:24
follow [1] - 9:14
FOR [1] - 1:12
form [4] - 11:16, 17:8, 18:19
former [1] - 12:21
formula [1] - 28:15
forth [2] - 6:11, 21:24
forward [4] - 21:21, 21:25, 22:6, 22:15
four [2] - 7:23, 8:3
Frank [2] - 2:20, 5:10
frankly [2] - 26:4, 28:13
fraud [1] - 43:17
Friday [4] - 1:7, 22:16, 35:20, 44:20
Fridays [1] - 44:9
Fritz [9] - 3:22, 7:5, 7:17, 8:13, 19:3, 20:13, 21:3, 25:16, 34:9
FRITZ [28] - 1:23, 6:20, 8:14, 10:5, 10:9, 10:20, 14:8, 15:6, 15:13, 19:4, 20:6, 20:24, 24:21, 24:24, 25:21, 26:13, 26:23, 27:15, 27:20, 28:17, 34:13, 36:21, 37:2, 40:10, 40:12, 40:17, 45:13, 45:15
fulfilling [1] - 30:22
full [1] - 8:4
future [3] - 5:18, 7:2, 13:20

## G

gather [1] - 25:18
general [1] - 17:4
George [2] - 2:14, 4:23
gestae [1] - 39:7
Giglio [2] - 30:8, 31:23
given [2] - 36:21, 41:12
Government [60] - 1:17, 11:7, 12:3, 12:5, 12:14, 12:19, 13:13, 15:25, 16:3, 16:5, 16:17, 18:10, 18:15, 20:17, 20:22, 21:20, 21:24, 21:25, 22:16, 22:19, 24:18, 25:25, 27:2, 28:6, 28:9, 28:14, 28:23, 28:24, 29:15, 29:17, 30:6, 30:14, 30:17, 31:3, 31:6, 31:13, 32:1, 33:2, 33:6, 34:8, 35:6, 35:11, 35:13, 35:21, 36:3, 36:10, 37:19, 38:5, 38:24, 39:3, 39:4, 39:6, 39:17, 39:18, 39:19, 40:3, 42:1, 42:11, 42:13, 44:1

Government's [11] - 6:10, 27:25, 28:18, 29:22, 29:24, 30:2, 30:8, 33:14, 38:14, 41:24, 42:12
granted [1] - 40:16
green [1] - 37:15
group [2] - 25:17, 27:6
guess [1] - 41:3
guilty [1] - 31:11
guys [1] - 28:1

## H

hand [3] - 32:7, 32:8, 35:17
handed [1] - 21:20
haphazard [1] - 28:19
happy [3] - 19:7, 19:15, 19:22
hard [10] - 8:1, 9:17, 9:23, 18:7, 22:9, 24:18, 29:7, 36:9, 36:11
hardcopy [2] - 11:17, 14:17
hash [1] - 28:15
hate [1] - 21:11
head [2] - 17:13, 33:9
hear [2] - 6:5, 6:6
heard [2] - 27:23, 30:3
hearing [1] - 12:8
hearsay [2] - 16:12, 17:12
heaven [1] - 27:8
heavy [1] - 21:20
heavy-handed [1] - 21:20
held [1] - 8:21
helpful [1] - 23:4
HINSHAW [1] - 1:21
hokey [1] - 31:9
hold [1] - 28:9
honestly [1] - 31:2
Honor [42] - 3:16, 3:23, 4:1, 4:12, 4:18, 4:24, 5:5, 5:11, 6:20, 7:4, 8:14, 10:20, 14:8, 14:20, 18:14, 19:4, 20:8, 20:24, 22:22, 24:21, 25:20, 25:21, 26:13, 27:12, 27:20, 28:17, 29:15, 36:21, 37:10, 39:16, 40:10, 40:20, 42:7, 43:18, 44:13, 44:17, 44:21, 44:23, 44:25, 45:5, 45:11, 45:13
HONORABLE [1] - 1:13
hopefully [2] - 22:13, 39:14
hour [1] - 43:2
house [2] - 11:20, 11:23

## I

idea [1] - 26:23
identified [1] - 39:1
identify [7] - 9:11, 29:8, 33:1, 33:2, 33:11, 36:7, 36:8
identifying [1] - 38:23
imagine [1] - 22:20
impasse [2] - 34:21, 34:22
important [1] - 32:24
in-house [2] - 11:20, 11:23

incidents [1] - 41:10
include [2] - 7:19, 38:7
including [1] - 11:19
inconvenience [1] - 42:4
indeed [2] - 11:8, 31:11
independent [1] - 31:22
indicate [3] - 19:23, 19:25, 34:17
indicated [5] - 6:19, 8:11, 9:10, 18:14, 19:22
indicates [1] - 10:12
indicating) [2] - 4:8, 37:14
indication [1] - 20:15
indicted [1] - 37:23
indictment [1] - 43:16
individual [6] - 25:3, 25:7, 28:13, 35:22, 36:7, 36:17
individuals [7] - 11:22, 25:2, 26:7, 26:9, 27:6, 27:22, 37:24
informally [1] - 34:25
information [20] - 10:2, 18:9, 20:11, 20:18, 24:10, 27:9, 27:10, 27:17, 30:9, 30:10, 30:12, 30:19, 30:20, 31:4, 31:5, 32:17, 32:18, 33:12, 35:7, 42:13
informed [2] - 13:9, 16:2
initial [4] - 26:18, 33:5, 35:21, 41:18
inquiry [1] - 20:5
instance [2] - 8:22, 9:18
instead [1] - 8:19
intended [1] - 20:1
intending [1] - 24:13
interest [1] - 32:7
interested [2] - 16:11, 17:11
interests [1] - 45:8
interim [1] - 18:13
Internet [5] - 7:11, 10:2, 10:6, 10:22, 14:18
interpreted [1] - 28:10
interrupt [1] - 21:3
intervention [2] - 21:14, 34:22
inventories [4] - 26:17, 32:24, 33:18, 35:7
inventory [6] - 9:13, 19:20, 22:19, 22:20, 22:23, 36:22
investigation [2] - 16:2, 37:23
investigative [1] - 23:15
inviting [1] - 38:19
involved [4] - 19:16, 25:13, 29:13, 37:22
IRIZARRY [2] - 1:13, 3:2
irrelevant [6] - 27:5, 27:8, 29:9, 29:19, 32:21, 36:19
issue [30] - 9:9, 10:21, 10:25, 11:2, 11:13, 11:15, 12:18, 13:2, 13:17, 13:22, 13:25, 14:9, 14:13, 14:15, 14:25, 15:5, 18:3, 18:6, 24:11, 24:16, 25:22, 26:18, 26:21, 27:1, 28:18, 28:19, 28:23, 35:4, 35:12, 39:9
issues [11] - 6:21, 7:6, 11:25, 13:4, 19:2, 21:13, 28:11, 28:13, 37:4, 37:18, 41:17
items [4] - 7:1, 12:2, 12:10, 12:20
itself [1] - 30:18

## J

jail [1] - 41:22
JAMES [1] - 2:18
James [1] - 5:6
January [2] - 6:10, 12:4
jeopardize [1] - 32:9
jeopardizing [1] - 33:14
John [3] - 4:19, 40:22, 44:17
joint [2] - 34:10, 34:12
Judge [2] - 3:2, 5:25
judge [1] - 31:24
JUDGE [1] - 1:13
judicial [1] - 31:7
JUST [1] - 10:17
justice [2] - 31:8, 45:8

## K

keep [1] - 36:14
kids [2] - 32:19, 32:20
kind [9] - 9:8, 14:4, 15:20, 16:13, 17:1, 17:11, 21:9, 36:14
kinds [1] - 20:2
knowing [1] - 25:8
knowledge [1] - 39:17
knows [2] - 27:8, 36:10

## L

laid [1] - 8:11
last [16] - 7:5, 8:15, 8:17, 8:18, 8:24, 8:25, 9:4, 10:3, 10:4, 10:24, 11:6, 11:11, 13:3, 13:7, 13:22, 15:18
law [6] - 20:4, 22:17, 35:21, 36:2, 36:16, 44:18
laying [1] - 6:12
least [12] - 7:6, 11:20, 12:9, 19:4, 19:12, 22:2, 24:6, 25:13, 32:2, 32:15, 32:23, 35:4
leave [2] - 8:9, 18:25
left [1] - 44:5
legal [1] - 38:10
less [2] - 34:14, 34:15
letter [23] - 6:10, 6:15, 6:19, 7:10, 7:13, 8:11, 8:20, 8:21, 10:10, 11:1, 12:7, 18:15, 20:11, 20:20, 20:21, 21:1, 21:4, 21:7, 21:17, 33:20, 34:12, 34:17, 45:12
level [2] - 41:2, 42:14
light [1] - 37:15
likely [8] - 9:18, 9:25, 18:8, 19:23, 23:17, 38:2, 44:3, 44:8
limine [1] - 39:10
limiting [1] - 29:17
line [1] - 29:16
list [6] - 7:21, 9:14, 19:7, 20:4, 20:6, 22:17
listed [1] - 20:21

listing [1] - 36:18
lists [2] - 7:25, 36:1
live [1] - 38:1
LLP [2] - 1:21, 2:6
locations [2] - 22:24, 26:16
lock [1] - 31:12
logistics [1] - 33:16
logs [1] - 14:5
look [11] - 11:8, 12:23, 24:14, 30:15, 30:18, 31:12, 31:17, 33:7, 34:2, 39:4
looked [5] - 13:13, 24:23, 28:2, 28:5, 38:15
looking [9] - 8:4, 8:20, 12:24, 23:15, 30:2, 30:7, 31:21, 38:25, 39:7
LORETTA [1] - 1:17
love [1] - 34:14
lower [1] - 41:2
LYNCH [1] - 1:17

## M

mail [5] - 2:24, 11:16, 14:12, 17:21, 32:19
mails [5] - 7:10, 7:19, 10:21, 14:18, 19:17
manageable [2] - 18:5, 39:13
Maranda [1] - 3:21
MARANDA [1] - 1:23
March [1] - 8:5
mark [1] - 4:4
material [8] - 7:24, 9:25, 10:6, 10:13, 10:23, 27:5, 36:24, 39:20
materials [20] - 8:12, 9:2, 9:6, 9:12, 14:17, 15:10, 15:14, 19:6, 19:9, 19:21, 19:24, 22:20, 24:12, 25:5, 28:5, 28:20, 28:21, 29:23, 37:22, 37:25
matter [9] - 14:1, 14:3, 15:17, 15:18, 15:21, 26:18, 27:7, 34:4, 35:22
mean [15] - 12:1, 22:7, 26:4, 26:15, 27:24, 28:6, 30:13, 30:21, 32:6, 32:19, 32:20, 38:8, 39:5, 42:10, 43:20
means [3] - 21:23, 24:24, 31:12
meet [1] - 39:19
members [2] - 6:6, 31:15
mention [1] - 21:16
mentioned [1] - 10:5
MERINGOLO [9] - 2:10, 2:12, 4:18, 40:20, 40:22, 42:7, 44:13, 44:17, 44:21
Meringolo [3] - 4:19, 40:22, 44:17
met [1] - 20:17
METTER [1] - 1:8
Metter [9] - 1:22, 3:11, 3:21, 3:25, 25:4, 26:2, 26:21, 29:6, 33:4
Metter's [2] - 26:20, 28:21
MICHAEL [1] - 1:8
Michael [2] - 1:22, 3:21
microphones [2] - 6:5, 6:7
might [13] - 11:24, 20:4, 21:10, 21:13, 21:14, 23:4, 27:14, 28:16, 31:4, 32:23,

35:16, 35:23, 42:13
**miscellaneous** [1] - 8:10
**missed** [1] - 36:19
**missing** [2] - 7:10, 21:3
**misstating** [1] - 16:7
**moment** [3] - 10:5, 10:10, 44:13
**monitoring** [7] - 40:24, 41:12, 41:15, 41:20, 41:23, 42:2, 42:4
**month** [3] - 8:6, 34:7, 40:12
**morning** [27] - 3:16, 3:17, 3:23, 3:24, 4:1, 4:2, 4:5, 4:6, 4:9, 4:10, 4:12, 4:15, 4:16, 4:18, 4:21, 4:22, 4:24, 5:2, 5:3, 5:5, 5:8, 5:9, 5:11, 5:14, 5:17, 44:18, 44:22
**Moskowitz** [7] - 2:4, 4:3, 4:4, 4:7, 4:13, 33:3, 37:10
**MOSKOWITZ** [6] - 2:6, 2:8, 4:12, 37:10, 37:13, 37:17
**most** [3] - 19:23, 38:22, 39:15
**motion** [8] - 31:25, 38:18, 38:20, 40:2, 40:6, 43:18, 43:21, 43:22
**motions** [6] - 37:1, 37:5, 37:8, 39:10, 44:3
**mouthpiece** [1] - 25:16
**move** [2] - 21:21, 22:15
**moves** [2] - 22:5, 32:8
**moving** [2] - 21:25, 36:14
**must** [1] - 22:20

**N**

**name** [1] - 3:19
**names** [6] - 18:17, 19:15, 19:16, 22:18, 35:20, 36:16
**near** [1] - 39:10
**necessarily** [2] - 33:13, 39:6
**necessary** [1] - 24:3
**need** [16] - 7:18, 8:1, 8:2, 9:1, 9:22, 15:13, 17:4, 18:10, 18:22, 20:1, 22:3, 34:3, 34:22, 37:6, 38:6, 39:2
**needed** [1] - 13:12
**needs** [3] - 19:5, 30:17, 42:5
**never** [2] - 30:3, 31:8
**NEW** [1] - 1:1
**New** [17] - 1:6, 1:18, 1:19, 1:23, 2:5, 2:8, 2:11, 2:15, 2:18, 2:20
**next** [8] - 4:20, 7:23, 8:3, 13:6, 22:16, 35:18, 35:20, 43:19
**Nicolois** [3] - 2:20, 5:10, 5:15
**nilly** [1] - 29:11
**none** [2] - 15:24, 40:14
**nonetheless** [1] - 38:4
**noon** [2] - 44:10, 44:11
**note** [3] - 6:25, 41:14, 42:21
**notes** [1] - 11:12
**nothing** [5] - 8:23, 10:16, 12:7, 12:16, 14:19
**noticed** [1] - 21:18
**novel** [1] - 35:4
**November** [3] - 11:7, 12:7, 12:10

**number** [7] - 8:21, 22:23, 30:18, 35:24, 41:6, 41:15, 41:16
**Number** [1] - 3:10

**O**

**o'clock** [1] - 44:24
**object** [1] - 31:18
**objection** [3] - 32:12, 40:3, 40:13
**objects** [1] - 29:16
**obligated** [1] - 25:25
**obligation** [6] - 20:18, 30:25, 31:1, 31:8, 31:10, 31:16
**obligations** [2] - 30:23, 39:19
**obtained** [3] - 10:6, 16:1, 28:20
**obviously** [4] - 19:25, 28:23, 32:21, 44:1
**occurred** [1] - 8:19
**odd** [1] - 5:24
**OF** [3] - 1:1, 1:3, 1:12
**office** [5] - 9:21, 25:12, 26:20, 31:15, 42:12
**officers** [1] - 31:7
**offices** [3] - 9:3, 11:19, 23:24
**Official** [1] - 2:23
**old** [1] - 40:25
**once** [2] - 24:9, 35:7
**one** [21] - 10:17, 12:5, 13:5, 19:13, 20:14, 20:19, 26:13, 30:18, 30:20, 32:6, 33:20, 34:12, 34:18, 35:16, 35:17, 35:24, 37:8, 38:23, 39:24, 41:2, 41:15
**one-page** [1] - 33:20
**ones** [2] - 17:10, 33:3
**onus** [1] - 9:11
**open** [3] - 3:1, 34:20, 44:9
**opinion** [1] - 25:6
**opportunity** [1] - 40:24
**opposed** [1] - 36:13
**order** [6] - 3:19, 17:25, 22:5, 38:22, 41:22, 42:9
**orders** [1] - 14:4
**otherwise** [1] - 43:10
**ourselves** [1] - 27:21
**outside** [2] - 11:24, 36:24
**overlap** [1] - 26:25
**overly** [1] - 9:16
**own** [2] - 28:14, 31:6

**P**

**P.C** [3] - 2:3, 2:10, 2:19
**page** [1] - 33:20
**paper** [2] - 31:12, 31:13
**part** [2] - 28:22, 42:22
**particular** [5] - 30:12, 31:21, 36:11, 41:19, 42:23
**parties** [6] - 11:10, 32:16, 34:19, 34:23, 37:6, 39:15
**Paul** [1] - 5:12

**PAUL** [1] - 2:19
**pause** [1] - 3:6
**Pause** [6] - 10:18, 11:4, 13:23, 23:9, 27:18, 44:15
**people** [1] - 38:8
**percent** [3] - 8:12, 24:17, 36:13
**perhaps** [16] - 7:2, 21:9, 21:12, 22:4, 24:3, 25:13, 26:15, 26:18, 26:19, 27:24, 34:4, 34:8, 34:9, 37:25, 39:7, 42:13
**period** [1] - 39:14
**permissible** [2] - 25:6, 27:11
**permission** [1] - 41:6
**permitted** [1] - 40:1
**person** [2] - 31:10, 42:8
**personal** [7] - 27:8, 27:9, 27:13, 27:16, 28:21, 32:17
**personally** [2] - 19:6, 28:3
**perspective** [1] - 34:9
**phone** [1] - 20:12
**phrasing** [1] - 14:21
**picked** [1] - 35:17
**piece** [2] - 31:12, 31:13
**piecemeal** [1] - 37:9
**pinpointing** [1] - 31:21
**place** [3] - 16:21, 41:20
**Plaza** [1] - 1:18
**point** [9] - 7:9, 9:14, 13:11, 14:22, 17:11, 26:23, 34:1, 37:7, 39:4
**pop** [1] - 43:6
**position** [9] - 19:9, 27:3, 28:25, 29:2, 29:17, 29:22, 31:3, 33:11, 36:24
**possession** [2] - 9:15, 39:21
**possibilities** [1] - 27:21
**possible** [3] - 27:15, 34:24
**possibly** [1] - 16:6
**post** [3] - 21:15, 33:18, 42:2
**post-monitoring** [1] - 42:2
**posted** [2] - 6:11, 15:20
**potentially** [2] - 21:13, 29:17
**practice** [1] - 38:20
**Pre** [2] - 40:15, 42:5
**Pre-Trial** [2] - 40:15, 42:5
**precious** [1] - 34:1
**preclude** [1] - 43:21
**precluded** [2] - 30:7, 39:6
**predated** [1] - 12:8
**prefer** [1] - 16:25
**preparation** [1] - 24:16
**present** [1] - 42:25
**presented** [1] - 32:2
**presumably** [1] - 12:19
**pretty** [1] - 25:18
**prevent** [1] - 30:2
**prevented** [1] - 30:22
**priest** [1] - 38:9
**prison** [1] - 41:9
**privilege** [20] - 11:9, 12:18, 13:2, 14:4, 14:10, 14:15, 15:15, 17:9, 17:10, 24:16, 26:6, 26:18, 27:7, 36:5, 36:6, 38:4, 38:17, 39:5

privileged [28] - 9:1, 9:6, 9:12, 10:23, 11:13, 13:11, 13:19, 14:22, 14:24, 16:13, 17:2, 18:8, 19:24, 21:16, 24:15, 25:5, 26:3, 29:10, 30:10, 30:19, 32:17, 33:21, 33:22, 35:16, 35:23, 37:21, 37:25, 39:18
privileges [3] - 38:10, 38:13, 38:23
proactively [1] - 31:7
problem [5] - 11:11, 20:24, 26:12, 34:20, 40:8
problematic [1] - 18:4
problems [1] - 32:6
procedure [2] - 18:15, 32:13
procedures [2] - 20:22, 20:25
proceeding [1] - 41:21
Proceedings [1] - 2:25
proceedings [9] - 3:6, 6:4, 10:18, 11:4, 13:23, 23:9, 27:18, 44:15, 45:18
process [7] - 9:8, 19:13, 19:14, 35:24, 36:10, 36:15, 39:13
produce [2] - 13:20, 29:8
produced [5] - 2:25, 12:15, 12:17, 15:22, 30:13
product [9] - 14:9, 14:14, 14:23, 15:8, 16:8, 17:3, 17:9, 30:20, 33:22
production [6] - 8:10, 17:7, 17:8, 25:10, 28:22, 29:10
proof [1] - 28:7
proper [1] - 21:22
proposal [1] - 32:22
prosecuting [1] - 31:11
prosecutor [3] - 12:21, 28:3, 28:4
prosecutors [1] - 23:18
protective [1] - 14:4
provide [12] - 7:15, 15:19, 19:7, 19:15, 25:25, 33:21, 34:8, 34:10, 36:1, 36:17, 36:18, 42:12
provided [11] - 7:24, 12:6, 12:10, 13:10, 13:13, 13:15, 15:25, 16:4, 22:25, 23:2, 23:5
provider [1] - 10:2
providers [4] - 7:11, 10:7, 10:22, 14:18
provides [1] - 32:4
providing [3] - 13:6, 22:16, 35:6
psychiatric [1] - 41:5
purely [1] - 32:17
pursuant [3] - 7:11, 12:12, 16:1
put [3] - 13:12, 20:4, 34:4
puts [1] - 29:17
putting [3] - 18:11, 33:9

**Q**

quality [1] - 32:9
quasi [1] - 31:7
quasi-judicial [1] - 31:7
questions [1] - 11:9
quickly [2] - 22:1, 34:24
quite [3] - 28:19, 31:2, 33:25

**R**

Rabbi [1] - 38:9
raise [4] - 10:3, 10:9, 27:1, 35:12
raised [3] - 9:9, 13:22, 15:1
raises [1] - 13:25
raising [2] - 14:25, 15:2
rather [1] - 25:22
reach [1] - 34:21
read [1] - 34:15
reads [1] - 3:19
ready [1] - 20:6
real [2] - 11:15, 28:11
really [15] - 8:10, 8:23, 12:16, 27:7, 27:16, 28:17, 30:17, 32:5, 32:11, 32:18, 32:20, 36:4, 36:15, 38:13, 41:4
realm [1] - 38:21
reason [2] - 31:20, 42:3
reasonable [4] - 39:12, 41:11, 43:5, 43:6
reasons [2] - 31:19, 45:9
receive [5] - 6:2, 6:10, 10:12, 19:20, 25:3
received [7] - 7:11, 7:21, 8:23, 10:14, 12:6, 20:13, 20:14
recollection [2] - 11:6, 19:6
record [3] - 3:13, 13:1, 45:9
recorded [1] - 2:25
records [1] - 7:20
redacted [1] - 15:21
regard [2] - 13:2, 37:5
regardless [1] - 24:14
relate [1] - 33:3
relates [2] - 32:25, 39:23
relationship [3] - 27:10, 42:24, 43:9
release [1] - 42:1
released [3] - 40:25, 41:8, 41:22
relevant [6] - 14:6, 20:5, 27:14, 30:8, 30:12, 33:13
relieve [1] - 31:16
relieved [1] - 30:14
remain [1] - 6:4
remaining [1] - 7:18
remember [1] - 41:21
remove [1] - 23:16
removed [3] - 13:12, 13:16, 13:19
removing [1] - 18:25
report [6] - 6:12, 15:19, 20:21, 34:7, 34:9, 34:10
Reporter [2] - 2:22, 2:23
reporter [1] - 16:21
represent [1] - 7:6
represented [2] - 8:16, 26:10
representing [3] - 23:24, 26:6, 26:11
request [6] - 7:25, 40:1, 40:10, 41:11, 43:6, 43:11
requested [2] - 18:17, 43:3
requesting [1] - 20:11
requests [1] - 39:24
require [1] - 21:13

requires [2] - 42:22, 43:1
res [1] - 39:7
reside [1] - 19:24
resistance [2] - 32:1, 32:11
resistant [1] - 17:25
resolve [2] - 26:21, 34:22
resolved [1] - 26:19
resources [2] - 31:14, 41:3
respect [9] - 6:25, 7:7, 10:2, 10:21, 13:5, 13:7, 18:16, 19:5, 23:14
respond [1] - 3:19
responded [1] - 20:19
responding [1] - 22:1
response [1] - 27:25
responsibility [1] - 30:15
responsible [1] - 42:8
result [1] - 32:14
resulted [1] - 13:14
retained [1] - 11:24
reverse [1] - 29:10
review [10] - 6:14, 9:21, 15:10, 17:22, 18:18, 19:2, 28:25, 29:5, 29:24, 33:5
reviewed [5] - 9:7, 12:21, 24:19, 29:4, 39:17
reviewing [3] - 18:16, 20:18, 23:20
reviews [1] - 23:19
Richard [2] - 4:25, 43:13
RICHARD [1] - 2:13
rise [1] - 3:4
risk [2] - 41:7, 42:17
role [1] - 29:21
rolling [1] - 36:12
RONALD [1] - 2:21
Ronald [1] - 5:12
ROSENBERG [6] - 2:13, 2:15, 4:24, 43:13, 43:23, 43:25
Rosenberg [3] - 4:25, 43:12, 43:13
rude [1] - 16:22
ruling [3] - 21:14, 31:25
Russo [1] - 5:12
RUSSO [4] - 2:21, 5:11, 5:21, 5:25

**S**

satisfied [1] - 32:16
saw [1] - 8:19
scale [1] - 11:18
Schaeffer [32] - 3:14, 6:24, 8:15, 8:25, 9:5, 9:9, 9:15, 10:3, 10:5, 10:9, 10:24, 12:25, 15:7, 16:9, 19:7, 19:8, 19:14, 19:18, 20:7, 21:1, 24:8, 24:24, 25:6, 25:23, 29:14, 30:4, 30:21, 33:17, 40:13, 41:13, 42:15, 45:1
SCHAEFFER [44] - 1:19, 3:14, 7:4, 7:17, 8:6, 8:9, 13:1, 13:21, 14:20, 15:4, 15:12, 15:23, 16:10, 16:15, 16:19, 17:15, 17:19, 17:21, 18:2, 18:14, 18:24, 20:8, 20:10, 21:4, 21:6, 22:22, 23:2, 23:7, 23:14, 24:1, 24:5, 24:11, 24:20, 25:24, 29:15, 32:12, 35:3,

35:11, 39:16, 40:5, 41:14, 42:19, 44:5, 45:2
**Schaeffer's** [1] - 9:21
**schedule** [1] - 8:2
**schedules** [1] - 5:19
**scheduling** [2] - 42:22, 43:1
**SCHLAM** [1] - 2:16
**school** [2] - 32:20, 44:18
**scope** [1] - 36:25
**search** [5] - 7:11, 7:22, 12:12, 22:14, 23:23
**searched** [1] - 26:17
**searches** [1] - 20:2
**seated** [6] - 3:5, 4:13, 4:19, 5:1, 5:7, 6:4
**SEC** [27] - 11:12, 13:5, 13:9, 13:15, 13:17, 13:18, 13:21, 14:2, 14:6, 14:9, 14:14, 14:19, 14:22, 14:24, 15:5, 15:8, 15:9, 15:14, 15:16, 15:25, 16:13, 16:25, 17:18, 18:5, 33:18, 37:23, 43:16
**SEC's** [1] - 13:11
**second** [3] - 8:25, 10:17, 16:21
**see** [14] - 6:17, 10:14, 18:21, 21:2, 22:10, 24:22, 30:15, 31:20, 33:7, 33:25, 35:9, 35:24, 42:3, 43:3
**seem** [4] - 10:15, 10:24, 11:2, 12:5
**sees** [1] - 41:6
**seize** [1] - 27:3
**seized** [25] - 7:22, 9:3, 9:7, 9:13, 9:20, 12:2, 12:12, 14:5, 14:11, 14:16, 18:7, 18:16, 19:5, 19:20, 19:21, 20:23, 22:19, 22:23, 22:24, 24:14, 25:11, 25:25, 29:6, 36:24, 37:19
**seizing** [1] - 11:18
**sending** [1] - 7:21
**sense** [1] - 15:24
**sent** [4] - 8:1, 17:22, 20:10, 21:7
**separate** [5] - 14:10, 23:13, 23:18, 24:11, 39:24
**servers** [1] - 25:9
**service** [4] - 7:11, 10:6, 10:22, 14:18
**Services** [2] - 40:15, 42:6
**set** [4] - 5:20, 5:22, 13:1, 44:6
**setting** [2] - 6:11, 32:12
**seven** [1] - 20:19
**several** [1] - 13:4
**severance** [2] - 40:2, 43:18
**Seymour** [2] - 2:10, 4:17
**shake** [1] - 17:13
**shared** [3] - 25:9, 26:3, 26:22
**shares** [1] - 26:5
**SHERWOOD** [2] - 2:18, 5:5
**Sherwood** [1] - 5:6
**show** [2] - 32:24, 43:2
**sick** [1] - 32:20
**sign** [2] - 41:4, 42:8
**Simels** [1] - 24:4
**similar** [1] - 40:6
**simplistic** [1] - 9:16
**simply** [4] - 9:24, 19:9, 21:1, 24:16
**single** [1] - 41:8

**sit** [2] - 33:15, 35:1
**sites** [1] - 7:22
**sitting** [2] - 5:16, 28:14
**situation** [3] - 23:23, 33:23, 36:6
**sketches** [2] - 22:24, 33:18
**so..** [1] - 26:1
**somewhat** [3] - 33:11, 35:4, 39:13
**sorry** [4] - 10:4, 21:2, 26:15, 35:20
**sort** [12] - 16:23, 21:13, 21:17, 22:5, 22:20, 25:16, 28:1, 28:15, 34:6, 34:21, 34:25, 36:4
**sounds** [2] - 32:22, 33:24
**Southern** [1] - 5:13
**speaking** [1] - 42:25
**specific** [1] - 33:6
**specify** [3] - 17:2, 31:20, 33:21
**speculation** [1] - 38:21
**spend** [1] - 22:10
**Speranza** [7] - 2:14, 4:23, 4:25, 43:14, 43:15, 43:19
**Spongetech** [6] - 9:4, 11:21, 16:2, 29:6, 42:24, 43:10
**Spongetech's** [2] - 25:14, 29:7
**spousal** [3] - 38:2, 38:17, 39:5
**standing** [1] - 5:15
**start** [3] - 23:21, 23:22, 24:6
**started** [1] - 6:3
**state** [1] - 3:12
**statement** [3] - 16:25, 17:4, 17:24
**statements** [1] - 39:9
**STATES** [3] - 1:1, 1:3, 1:13
**States** [5] - 1:5, 1:17, 1:20, 3:10, 3:15
**status** [14] - 3:9, 6:11, 6:25, 7:5, 11:14, 12:8, 13:3, 13:7, 22:4, 34:7, 34:8, 34:10, 45:12, 45:14
**STATUS** [1] - 1:12
**stenography** [1] - 2:25
**step** [5] - 9:20, 19:12, 19:13, 35:24, 36:15
**steps** [9] - 8:16, 9:5, 10:15, 18:9, 18:10, 18:11, 21:21, 21:22, 28:24
**Steve** [1] - 4:4
**Steven** [2] - 2:4, 4:3
**still** [2] - 11:2, 11:3
**STONE** [1] - 2:16
**straight** [2] - 13:1, 17:16
**Street** [1] - 2:14
**stretch** [1] - 11:22
**stuff** [3] - 18:5, 28:9, 34:15
**subject** [1] - 38:3
**subpoena** [1] - 28:20
**subpoenaed** [1] - 7:20
**subsequent** [2] - 41:20, 43:16
**subsequently** [1] - 16:2
**suggest** [1] - 33:15
**suggestions** [1] - 27:23
**Suite** [3] - 2:7, 2:11, 2:14
**suretor** [3] - 42:12, 43:3, 43:9
**suretors** [1] - 42:23

## T

**table** [2] - 25:11, 25:12
**taint** [4] - 11:14, 18:11, 18:22, 20:2
**task** [1] - 24:9
**teach** [2] - 44:18, 44:19
**team** [11] - 11:9, 11:15, 18:11, 18:21, 18:22, 18:24, 20:2, 23:12, 23:18, 24:4
**technology** [1] - 22:13
**Tele** [1] - 2:23
**tends** [1] - 31:5
**Tepfer** [5] - 2:7, 4:11, 4:13, 33:3, 37:11
**term** [1] - 31:9
**terms** [4] - 9:14, 17:6, 25:8, 36:5
**testimonial** [1] - 43:15
**testimony** [1] - 12:16
**thankfully** [1] - 22:12
**THE** [111] - 1:13, 3:4, 3:5, 3:8, 3:9, 3:17, 3:21, 3:24, 4:1, 4:2, 4:3, 4:6, 4:9, 4:10, 4:11, 4:15, 4:16, 4:17, 4:21, 4:22, 4:23, 5:2, 5:3, 5:4, 5:8, 5:9, 5:10, 5:17, 5:23, 6:1, 6:17, 6:22, 7:15, 8:4, 8:8, 8:13, 10:4, 10:8, 10:17, 11:6, 13:18, 13:25, 15:2, 15:16, 16:9, 16:11, 16:16, 16:20, 17:17, 17:20, 17:24, 18:3, 18:21, 19:3, 20:3, 20:9, 21:2, 21:5, 21:8, 22:25, 23:4, 23:8, 23:11, 23:21, 24:2, 24:6, 24:17, 24:22, 25:15, 25:22, 26:2, 26:15, 27:13, 27:23, 29:14, 30:4, 32:15, 34:14, 35:10, 35:15, 37:1, 37:3, 37:12, 37:15, 38:8, 39:22, 40:7, 40:11, 40:14, 40:18, 40:21, 41:13, 42:3, 42:9, 43:5, 43:20, 43:24, 44:1, 44:8, 44:10, 44:11, 44:14, 44:20, 44:22, 44:24, 45:1, 45:3, 45:6, 45:12, 45:14, 45:16
**themselves** [1] - 33:19
**therefore** [3] - 18:19, 20:17, 42:24
**they've** [1] - 14:11
**things'** [1] - 8:22
**thinking** [1] - 29:16
**thinks** [1] - 35:13
**Third** [2] - 1:22, 2:4
**Thomas** [3] - 2:17, 5:4, 41:15
**thousands** [2] - 22:8
**three** [2] - 17:23, 36:15
**three-step** [1] - 36:15
**throw** [1] - 28:1
**timely** [1] - 32:8
**today** [6] - 11:1, 23:7, 23:8, 33:18, 35:25, 41:25
**together** [5] - 18:11, 20:4, 44:2, 44:3, 44:4
**token** [2] - 28:11, 33:10
**took** [1] - 15:10
**Torres** [1] - 2:22
**torturing** [1] - 27:20
**TRANSCRIPT** [1] - 1:12
**Transcript** [1] - 2:25
**Transcription** [1] - 2:25
**transcripts** [1] - 12:15

**travel** [2] - 40:10, 40:12
**treatment** [2] - 23:20, 41:5
**trial** [9] - 5:13, 5:19, 5:22, 18:21, 23:13, 23:19, 24:16, 39:9, 44:8
**Trial** [2] - 40:15, 42:5
**troubling** [1] - 27:2
**try** [1] - 8:2
**trying** [2] - 22:11, 28:15
**turn** [11] - 7:18, 16:16, 16:17, 17:19, 17:21, 24:12, 24:13, 31:18, 38:24, 39:20, 43:22
**turned** [6] - 12:22, 30:25, 36:20, 37:25, 39:2
**turning** [7] - 12:19, 24:18, 29:22, 32:3, 35:22, 38:5, 38:14
**twisted** [1] - 30:5
**twisting** [1] - 30:5
**two** [5] - 22:10, 35:15, 37:17, 39:24, 41:16
**two-fold** [1] - 35:15
**type** [2] - 30:9, 38:3

## U

**ultimate** [1] - 33:14
**ultimately** [1] - 28:6
**uncomfortable** [1] - 31:3
**under** [3] - 38:16, 40:23, 41:5
**understood** [1] - 9:23
**undoubtedly** [2] - 10:20, 10:23
**unfortunately** [1] - 5:14
**UNITED** [3] - 1:1, 1:3, 1:13
**United** [5] - 1:5, 1:17, 1:20, 3:10, 3:14
**unless** [1] - 26:6
**unnecessarily** [1] - 34:1
**unreasonable** [1] - 33:8
**up** [7] - 9:2, 21:11, 32:12, 35:17, 38:15, 43:2, 43:6

## V

**various** [1] - 27:21
**VButlerRPR@aol.com** [1] - 2:24
**versus** [1] - 3:10
**Victoria** [1] - 2:22
**view** [4] - 13:11, 14:22, 22:2, 41:24
**violation** [1] - 29:20
**violations** [1] - 43:17
**virtually** [3] - 8:19, 8:23, 20:25
**voluminous** [1] - 22:7

## W

**wait** [1] - 44:2
**waiting** [2] - 12:17, 36:13
**wants** [2] - 31:6, 44:1
**warrant** [2] - 7:12, 36:25
**warrants** [3] - 12:13, 22:21, 23:23
**wasting** [1] - 34:1

**Wednesdays** [1] - 44:19
**week** [8] - 8:4, 9:10, 13:6, 19:8, 20:7, 20:13, 20:16, 35:19
**weeks** [2] - 7:23, 8:3
**West** [1] - 2:14
**whatsoever** [2] - 29:21, 32:18
**WHEREUPON** [1] - 45:18
**whole** [4] - 11:17, 11:18, 24:4, 39:9
**whole-scale** [1] - 11:18
**wholesale** [2] - 14:17, 25:10
**William** [1] - 3:14
**WILLIAM** [1] - 1:19
**willy** [1] - 29:11
**willy-nilly** [1] - 29:11
**wise** [1] - 21:14
**withheld** [2] - 17:7
**withhold** [1] - 15:14
**withholding** [2] - 14:14, 17:10
**wok** [1] - 15:8
**work-product** [7] - 14:9, 14:14, 14:23, 16:8, 17:3, 17:9, 30:20
**workable** [1] - 32:3
**worth** [1] - 27:4

## Y

**years** [4] - 22:10, 22:12, 27:4, 27:22
**YORK** [1] - 1:1
**York** [17] - 1:6, 1:18, 1:19, 1:23, 2:5, 2:8, 2:11, 2:15, 2:18, 2:20
**yourself** [1] - 31:22
**yourselves** [1] - 24:19