1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - -   X

UNITED STATES OF AMERICA,    :    10cr600

                             :


        -against-            :
                                  United States Courthouse
                                  Brooklyn, New York

MICHAEL METTER,              :
ANDREW TEPFER

                                  October 24, 2011
            Defendants.      :    10:00 o'clock

- - - - - - - - - - - - -   X


                 TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DORA L. IRIZARRY
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Government:          LORETTA E. LYNCH
                             United States Attorney
                             BY: ROGER BURLINGAME
                             Assistant United States Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York


For the Defendant:           MARANDA FRITZ, ESQ.


Court Reporter:              Burton H. Sulzer
                             225 Cadman Plaza East
                             Brooklyn, New York
                             (718) 613-2481
                             Fax )718 613-2505

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.


                 BHS     OCR     CM     CRR     CSR

2

(In open court.)

THE COURT:  You may call the case.

(Case called-appearances noted.)

THE COURT:  Good morning to counsel and their clients.

This matter was on today for a motion hearing.  As counsel can tell, the nature of the case has changed quite dramatically since the only remaining defendants here are Mr. Metter and Mr. Tepfer, and so there were a number of motions to sever and so on that the court will be terminating as moot.

Because of the intervening change, the court is not prepared to go forward on the motions today.  I don't know if the parties do want to add anything in connection with the papers that have been filed.

I'll be happy to hear what else you have to say today and I can take that into consideration in deciding the motions, but I also wanted to know whether, given the change in the landscape, whether there is any change moving forward in connection with both of the remaining defendants here today.

Mr. Burlingame, do you want to be heard?

MR. BURLINGAME:  Sure, Judge.  I think it would be helpful to the court in deciding the remaining motions to have a sense of the landscape of where the government is with reviewing.

3

I think that the Rule 16 issues are intertwined with the motion the defendants filed, and I can brief the court on that orally now or I would be happy, and it might be better to provide the court with a short letter just explaining exactly what the status is now.

I've also noticed in reviewing the government's initial response to the defendants' reply motion that there was -- frankly our best argument that was left out of our responses, which is that the defendants don't have standing to address suppression as to any but the computers that were seized personally from Mr. Metter.

There also have been some changes in that the Spongetech trustee has waived any privilege assertion as to all the computers and materials that were seized from Spongetech.

So I think that perhaps the best thing to do is rather than get into it now orally -- I know that I'm better on paper -- it might be better to just submit a letter briefly going through those changes and, with the court's permission, just supplementing some of our arguments in our responsive papers.

THE COURT:  Ms. Fritz.

MS. FRITZ:  Your Honor, if the court is not going to schedule any other day for oral argument, I would love an opportunity to spend just a couple of minutes talking about

the venue issue, on the one hand, and the motion the to suppress on the other hand.

THE COURT:  I really don't want to hear any argument on the venue issue, unless you have something that has not been addressed specifically in your papers.  The papers are quite extensive.

I indicated previously that I didn't see why it was necessary to file two separate sets of motion papers and extending the amount of paper that was submitted in connection with the motions.

Do you have something different that is not covered in the papers?  If you're just going regurgitate the arguments that were made in the papers I frankly would rather have written response, a supplemental response that I'm going to allow the government to make given the change in the landscape all the way around, including in connection with the bankruptcy and everything else.

MS. FRITZ:  I don't know if any of those issues affect the venue issue.  There is one issue that was raised that I would like to address.

The government made a suggestion that the acts of alleged perjury somehow related to conduct within the Eastern District of New York and there is an effort, I think, to tie -- to tie it back to Mr. Speranza because Mr. Speranza really is the only connection to the Eastern District.

5

So I went back to double check the indictment to see whether any of the alleged acts in any way related to Mr. Speranza and I was able to confirm that the allegations all relate to the activities of Spongetech and more specifically relate to Mr. Metter's testimony that at various auto shows he had met certain individuals.

So certainly I argue in the brief that the government's effort to employ a substantial contact test is just at this point wrong under the law, but also the contact that they're relying on trying to pull it back in with Speranza, I think they are inconsistent with the indictment.

Do you wish to respond to that briefly?

MR. BURLINGAME:  Sure, Judge.

I'm sure the court is well aware the facts that the government will introduce supporting venue are something that will happen at trial and a motion to dismiss for failure to prove up those facts is appropriately taken as part of the Rule 29 motion not now prior to the government making its factual showing.

The government has alleged facts -- the indictment alleges facts sufficient to support venue, and beyond the defendants' purely legal argument that a perjury taking place in Washington, D.C cannot support venue in the Eastern District of New York, I don't think that getting further into the facts is a valid exercise.

THE COURT:  There was more here because there was the creation of the Website which was specifically requested by Moskowitz, as the conspiracy that is alleged here, and so even if one overt act was committed in furtherance of the conspiracy then venue would be proper in the Eastern District, and the Websites were all created in the Eastern District and, in addition to that, there is a money laundering conspiracy and structuring allegations in the indictment.

So it's not just Speranza, there's Cavenagh and there is Nicolois, who were engaged in structuring on behalf of this fraud to do what money laundering is, which is to hide the source of the proceeds, which is the securities fraud, and the structuring was done in, among other places, financial institutions that were located within the Eastern District of New York.

MR. BURLINGAME:  That is correct, Judge.  There are also additional facts that the government will introduce as to venue at trial.

The only point I was making is that analysis one, I think the case law is clear, is to take -- whether or not the government has facts sufficient to support venue, is an analysis that is inappropriately taken up in this posture and so I don't think we need to -- all I would say is that I don't think we even need to engage in addressing that argument on the merits as to Mr. Speranza because it's premature.

If we were to address it on the merits, for the reasons your Honor points out, it's a losing argument.

MS. FRITZ:  I would only point out, we have not addressed venue as to the issues that you've discussed.  We have addressed the venue with respect to the perjury.  It's the locus of the perjury that determines the presence or absence of venue.

Under this particular case, U.S. versus Novaks makes it very clear that just by virtue of the indictment itself here, and it is an unusual circumstance where that occurs, the indictment on its face here facially is defective because it alleges that the conduct occurred in D.C. and does not include any sort of the saving or conclusory language that the government sometimes includes.

In fact, in the Novaks case the court went out of its way to say that because the indictment alleged conduct occurred in other jurisdiction the defect was to glaringly ly obvious that they wouldn't even find a waiver by the defendant who had failed to challenge early on in the case.  So in that instance it was found to be an obvious defect.

Again, to the extent that we even move beyond the face of the indictment, we have an issue here because the Second Circuit has addressed a couple of times in the last few years, where they have clearly taken a position with respect to how to analyze the issue of venue that is flatly

inconsistent with what the government is inviting your Honor to do in relying in this case on a Read analysis.

So, again, I have cited those recent Second Circuit cases.  I think they are very clear that it would be error for the government to simply follow down the road that is contained in the government's brief that Read does not confer venue; to the contrary, it is the subsequent analysis to ensure that once venue has been determined that venue is not unconstitutional.

THE COURT:  Anything else, Mr. Burlingame at this time?

MR. BURLINGAME:  I think now we're just getting into a regurgitation of what is in the brief and I believe the government's motion papers address that point adequately.

THE COURT:  Mr. Tepfer basically didn't file anything separately but rather joined in the letter motions, if I'm correct?

MR. MOSKOWITZ:  That's correct, your Honor.  Only with respect to the motion to suppress because we are only in the conspiracy count and the venue issue does not apply.

THE COURT:  To the extent, Ms. Fritz, that you want to discuss anything about the motion to dismiss that is in addition to whatever you've argued in your papers, if there's anything you want to state now, I'm happy to hear you.

MS. FRITZ:  On the motion to suppress, your Honor?

9

THE COURT:   Yes.

MS. FRITZ:   Based on all the briefing, your Honor, it's my view that the motion to suppress -- the issues on the motion to suppress are now as clear as a bell.

The government went and obtained very specific search warrants that authorized them to seize certain property.  There is no question that the government then has the authority under these warrants to go in and conduct what are obviously overbroad seizures of electronic data.

Here's where the government and I diverge.  It's my view that that overbroad seizure that these warrants authorize is only for the purpose of the government then completely execution of the search warrant by conducting whatever process it wants to conduct.

Typically, in this day and age it's a forensic search in order to identify what is within the scope of the search warrant.  It's in the DOJ manual, it's in every case cited by both sides that that is the critical next step. These warrants do not authorize the government to take and simply sit on a volume of material.

Do I understand that there's a lot here? Sixty-eight hard drives.  I get it, I understand that.  Does anybody want to conduct a forensic review that would be required in this case?  I get that too.  They don't want to.

But my position is just as old-fashioned and

straightforward as it can be, that is the indispensable next step and I think your Honor has been put in an uncomfortable position here because if we ignore that, and if we say you get a limited warrant but then you simply keep the materials and the only discussion that occurs is a forensic examination that might occur in advance of a trial, for example, then I think these warrants become very nearly irrelevant.

Judge Rakoff, confronted with that circumstance, said you cannot then ignore the very warrant, particularized warrant that gave you the authority to seize in the first place.

So, again, I think the court at this point is confronted with such a clear issue; number one, does the government have the obligation, as I believe the case law and the DOJ manual provide, to, within a reasonable time, conduct an analysis to identify the material that is within the scope of the warrant -- number one -- do they have that obligation? I think the authorities are clear that they do.

Number two, in this case, what do we do now? Because we're sitting here a year and a half later, the government has declined to do so and in my view --

THE COURT:  What do you mean the government has declined to do so?  My understanding throughout the case was that there were some issues concerning perhaps some computerized information that was governed by attorney-client

11

privilege and there was a lot of back and forth in connection with that and that had a role to play in delaying in looking at the materials in general because what was privileged and what wasn't privileged had to be determined before the government could just jump in with both feet and start looking at the materials, and there was delay on both sides in that regard.

There were things the defense was supposed to do that the defense didn't do, so why shouldn't that also play a role in connection with this issue?

MS. FRITZ:  I have addressed in my papers that issue.  What I've tried to point out is, seizures occurred in May.  The government's first act with respect to any processing of the computers didn't occur until December, and then it took, in my view, approximately two months for the defense to completely respond to the issue of what we could tell them about attorney-client relationship.

So, to the extent that there's an effort now to effectively blame the defense for this, I think the papers demonstrate that that's a very limited period of time.  Having said that, even assuming that that's the case, it remains my view that the government has an obligation to complete the execution of the search warrant.

I believe, as we sit here today, that the government does not intend, even now, to proceed with that process.  I

BHS      OCR      CM      CRR      CSR

12

would certainly welcome the court asking the government whether it intends to conduct at this point the forensic analysis in order to ensure compliance with the search warrant.

I do not believe that they do and so, again, it gets back to a very basic question, do they have that obligation and, if so, what happens if they don't do that?  Because we're sitting here a year and a half later and I don't think that the government is able to really attribute any meaningful delay to the defense.

I think we all know what happened here.  There are 68 hard drives and a forensic analysis is going to take time and resources and that has been avoided.

THE COURT:  Mr. Burlingame.

MR. BURLINGAME:  Judge, I do think that the government's view is that the delays that we're talking about were largely a result of the defense being unwilling to assist the government in taking steps that it needed to do to move the process forward, but I think it's unproductive to sit here and bicker as to which letter preceded which letter and who was at fault.

I think that the government has now taken steps in dealing with the trustee, and also that the fact that additional defendants are now out of the case has greatly simplified this process, so I think the more fruitful question

13

is where to go, how we can complete this process expeditiously going forward, and I think that that's something that I can explain to your Honor in a letter and we are confident that we have now gotten the situation under control and we should be able to move forward in an expeditious fashion from here.

THE COURT:  Mr. Moskowitz, is there anything that you would like to add since this is the part of the motion that you joined in?

MR. MOSKOWITZ:  No, your Honor.  I join in. Ms. Fritz's comments.

THE COURT:  All right.  What I'm going to do then is, I'm going to give the government the opportunity to file a supplemental response.  I think that that will be helpful to the court, and since it's still the defense motion, I'll give the defense an opportunity to reply.

How long do you think it's going to take you, Mr. Burlingame, to prepare that response, supplemental response?

MR. BURLINGAME:  I think a week would be sufficient. If your Honor was feeling charitable, two weeks would be great.

THE COURT:  You can have two weeks.  The supplemental response from the government November 7th.  And the defense reply --

MS. FRITZ:  Your Honor, I have a trial built in during that period.  Could I get three weeks to respond?

14

THE COURT:  Yes.  That would bring us into November 28th, which is the Monday right after Thanksgiving.

MS. FRITZ:  Perhaps the following Monday; would that be possible?

THE COURT:  Sure.  December 5th.  The reply really should not be more than ten pages.  Are the parties available Wednesday, December 21st?

MS. FRITZ:  Yes, your Honor.

MR. MOSKOWITZ:  Yes, your Honor.

THE COURT:  I have Chanukah occurring during that period of time.  Is that a problem for anybody?

MR. MOSKOWITZ:  Not a problem.

MS. FRITZ:  No.

THE COURT:  What is your pleasure; morning?

MR. MOSKOWITZ:  Fine, Judge.

THE COURT:  Mr. Burlingame, for the government?

MR. BURLINGAME:  I think it's fine.  Let me get to December 21st on my calendar here.

(Pause.)

MR. BURLINGAME:  I'm good until 4 o'clock in the afternoon.

THE COURT:  Why don't we set it for 10 o'clock, December 21st, and I hope to have a decision for you that day.

Then we'll have a status conference.  I will let the parties know in advance if I think that any additional oral

15

argument will be helpful.  What I will do, in that regard I'm sure that I'll have narrow issues that I really would like to hear about.  I probably will not, because the papers have been very, very thorough, and with the supplemental that should be enough, but if I do, I'll try and narrow the issues so that the parties can focus on those issues and I know attorneys find that helpful and it's helpful to the court to make the conference more meaningful.

          Time is excluded based on continued motion practice.

          MR. BURLINGAME:  Thank you, Judge.

          THE COURT:   This was deemed a complex case as well previously.  Anything else that the parties would like to address today?

          MR. BURLINGAME:  No, Judge.

          MR. MOSKOWITZ:  No, your Honor.

          MS. FRITZ:  No.

          THE COURT:   Thank you.  The parties are excused.

                    *********